A. Bradley **FLICKINGER**, Petitioner

v.

**LEBANON SCHOOL DISTRICT,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 6, 2006.
Decided May 3, 2006.

---

Harry W. Reed, Jr., Lebanon, for petitioner.

Howard L. Kelin, Lancaster, for respondent.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

A. Bradley Flickinger (Flickinger) petitions this Court for review of an order of the Pennsylvania Secretary of Education (Secretary) affirming the decision of the Lebanon School District (District) to dismiss him from his position as middle school principal under the Public School Code of 1949 (Code)[1] for willful neglect of duties.

This appeal involves the handling by Flickinger of a "gun" incident at the middle school where he had served as principal since March of 2003. The facts of this case were set forth by the Secretary. For disciplinary purposes, the normal chain of command in the middle school was principal, assistant principals, guidance counselors, team leaders and teachers. The "Emergency Chain of Command" was to be used in situations when a weapon was involved, and Flickinger conveyed to the staff that when a weapon was involved a principal would be the first responder. Flickinger had an assistant principal, Barbara Rothermal (Rothermal), and an assistant principal/assessment coordinator, Mary Garrett (Garrett).

Flickinger received crisis training based on a manual prepared by the National Crisis Prevention Institute (NCPI Manual) at a summer workshop in August 2003, on how to respond to reports of weapons. Flickinger acknowledged that based on his training weapons reports have the "utmost priority" for school administrators. According to the NCPI Manual, it is always advisable to intervene with a "team" of two or more administrators in crisis situations and the team leader should not be restricted to senior ranking staff. The NCPI Manual also states that one of the best team leaders in a crisis is the individual who arrives first on the scene. Flickinger agreed that team intervention was a good thing.

On September 17, 2004, at approximately 12:00 p.m., there had been a fight between R.K. and V.B. V.B. was bloody and in the nurse's office while Flickinger had R.K. in his office. R.K. told Flickinger she had a past history with V.B. and he knew that a teacher had reported to him that V.B.'s mother had threatened a teacher.[2]

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

2. In April of 2004, V.B.'s mother threatened violence against a teacher. The threat was verbal on one occasion and in writing on a second occasion. Flickinger also testified about receiving reports that V.B.'s mother

At 12:10 p.m., V.B.'s sister, Ashley Martin (Martin), signed into the middle school at the security desk. At about the same time, Flickinger went to the nurse's office and spoke to V.B. and Martin for approximately 15 minutes. When Flickinger left the nurse's office, he was confronted by R.K.'s mother, Crystal Herr (Herr), in the lobby. She had signed into the middle school at 12:25 p.m. Believing there could have been a potentially bad situation if Herr and Martin saw each other in the lobby, Flickinger took Herr into his office. None of V.B.'s family members were ever in the lobby area at the same time as Herr.

A few minutes before 12:30 p.m., V.B.'s mother and another sister entered the building when V.B. and Martin came out of the nurse's office. Neither V.B.'s mother nor her other sister signed in at the security desk because they never left that area. Within two to three minutes of entering the building, V.B.'s mother left with V.B. and her sisters and the sign-out time for Martin was 12:30 p.m. Flickinger dealt with Herr and R.K. in his office for approximately 40 minutes, from 12:30 p.m. until 1:06 p.m. when Herr signed out.

At about 12:00 p.m. on the same day, a teacher brought a student, L.M., to Rothermal because he had nearly been in a fight in the cafeteria. At 12:30 p.m., L.M. told Rothermal that other students said they saw a student named N. with a gun. Rothermal learned N.A.'s last name and, after checking his schedule for the class he was currently in and the class he would be going to next, Rothermal told Flickinger at approximately 12:45 p.m. that she needed his help because they might have a student with a gun on the third floor and she did not feel comfortable handling it alone. Over the next 15 minutes, Rothermal asked Flickinger at least three times if he was physically acting out against other mothers.

was ready to handle the gun report and each time Flickinger signaled for Rothermal to give him a few more minutes. Flickinger never indicated to Rothermal that he would not be able to assist her with the gun report and she thought he was going to help her, but he just kept putting her off by signaling for her to wait a minute.

At approximately 1:00 p.m., Garrett returned to her office from her rounds. Also, at approximately 1:00 p.m., when Flickinger again signaled for Rothermal to give him more time, Rothermal told Garrett of the report of a gun and, as they both left the office, they noticed Flickinger's door was shut. Garrett got N.A. out of his class and Rothermal searched him and found a gun and knife in his pocket. While in the hallway, Garrett told a guidance counselor to call the secretary to issue a code red, find Flickinger and call the police. Garrett asked N.A. where his locker was located and as she was trying to open the combination lock, Flickinger, who arrived on the scene, walked up and used his key to open the locker. N.A. was then escorted to the main office with Flickinger in front, Garrett and N.A. behind him and Rothermal last. When they arrived at the main office the police were there. Garrett, Rothermal and N.A. went with the police into Garrett's office and Flickinger went into his office. After the police left with N.A., the District Superintendent Dr. Marianne Bartley (Bartley) arrived from the central office and Flickinger told her that he had been handling a fight between two girls. Flickinger asserted that responding to the report of a bloody child who had been struck in the nose and was being cared for by the school nurse had equal priority to responding to the report of a gun in the school building.

On September 20, 2004, Bartley issued a letter to Flickinger notifying him that he had been dismissed from his duties as middle school principal effective September 17, 2004, and gave as a reason for his termination that he "displayed a willful neglect of duty by [his] failure to respond to a crisis situation." Flickinger also received a letter from Bartley dated September 21, 2004, informing him that the School Board took action to dismiss him at its September 20, 2004 meeting for willful neglect of duty. On October 15, 2004, Flickinger filed a petition of appeal to the Secretary against the District pursuant to Section 1131 of the Code, 24 P.S. § 11–1131 (First Petition of Appeal).[3]

On October 27, 2004, Bartley sent Flickinger a letter advising him that the School Board rescinded its action of September 20, 2004, terminating his employment as of September 17, 2004; he was immediately placed on administrative leave pending an independent investigation of matters pertaining to the events surrounding the gun report; and he was not to be on District property at any time during his administrative leave.[4] The First Petition of Appeal was dismissed as being moot because of Flickinger's re-employment.

On March 16, 2005, the District issued a Statement of Charges and Notice of Hearing to Flickinger alleging violations of Section 1122(a) of the Code, 24 P.S. § 11–1122(a), which included allegations that Flickinger's conduct constituted persistent negligence in the performance of duties, willful neglect of duties, incompetency and persistent and willful violation of or failure to comply with school laws of this Commonwealth. Hearings were conducted on April 12, 2005 and April 20, 2005. On May 16, 2005, the District issued a decision dismissing Flickinger for willful neglect of duties due to his response to the gun report on September 17, 2004.[5] The School Board found Flickinger was mindful at all relevant times, pursuant to the directives he had received as principal of the middle school and his training as an education administrator, of the following: (a) his job duties as principal included being head of the "Emergency Chain of Command" for the middle school; (b) it was absolutely critical for the middle school administration to respond immediately to the report of a gun in the school building; and (c) it was important to have a "team" rather than an individual administrator respond to such a crisis situation. The School Board also found Flickinger

3. Section 1131 of the Code provides in relevant part:

In case the professional employe concerned considers himself or herself aggrieved by the action of the board of school directors, an appeal by petition, setting forth the grounds for such appeal, may be taken to the [Secretary of Education] at Harrisburg.

4. According to Flickinger, this was a disciplinary suspension and was imposed upon him without procedural due process, without notice, without any opportunity to be heard, and without any opportunity to present documents and evidence contesting the disciplinary suspension, which lasted until the School Board made its second decision on May 16, 2005.

5. The School Board concluded that the other alleged misconduct identified in the Statement of Charges against Flickinger (persistent negligence in the performance of duties, incompetency and persistent and willful violation of or failure to comply with school laws of this Commonwealth), which related to his improper handling of performance evaluations for teachers, his failure to conduct induction meetings for temporary professional employees, and his failure to issue a timely and accurate notice to parents regarding tutoring opportunities for students did not constitute grounds for termination. The School Board did not take this alleged misconduct into account in its decision to terminate Flickinger for willful neglect of duties.

intentionally disregarded his duties by failing to promptly assist Rothermal in responding to the report of a gun in the building; by falsely and repeatedly communicating to Rothermal over a period of at least 15 minutes that he would be helping her very soon; and by failing to advise Rothermal that he would not be providing prompt assistance and that she should seek help from others in order to immediately respond to the report of a gun in the building. Flickinger filed a tenure appeal to the Secretary (Second Petition of Appeal) and after a *de novo* review of the record[6] the Secretary issued an adjudication affirming the School Board's decision. Flickinger appealed the Secretary's denial of his Second Petition of Appeal to this Court for its review.[7]

■ Flickinger initially contends that because his September 20, 2004 dismissal by the School Board without charges or any hearing violated his fundamental right to due process of law because he did not receive a pre-termination hearing as well as a hearing before the School District,[8] he is entitled to reinstatement. The District responds by claiming that any due process violation it committed against Flickinger on September 20, 2004, was rectified by his reinstatement and contemporary suspension with a statement of charges and notice of hearing as well as the *de novo* review of the matter provided by the Secretary. We agree. When a governmental body fails to give the required due process or statutory hearing, the remedy is not to dismiss the charges against the individual but to rescind the action and then give the employee any due hearing and statutory hearings required. *Pavonarius v. City of Allentown*, 157 Pa.Cmwlth. 116, 629 A.2d 204 (1993). While Flickinger's initial dismissal was fatally flawed, it was cured by the "do over" when he was reinstated by the District on October 27, 2004, suspended, charges were filed, hearings were held and a *de novo* review was conducted before the Secretary, all of which provided him with all the process that he was due before he was terminated. *See also Forest Area School District v. Shoup*, 153 Pa.Cmwlth. 423, 621 A.2d 1121 (1993).

As to the merits, Flickinger contends that there was no substantial evidence to support his dismissal on grounds of willful neglect of duties because at the time of the gun report he was attempting to de-escalate an incident that had substantial potential for immediate violence between two

---

6. On appeal, the Secretary is vested with *de novo* review whether he takes additional testimony or simply reviews the record created before the school board. *Belasco v. Board of Public Education of the School District of Pittsburgh*, 510 Pa. 504, 510 A.2d 337 (1986).

7. Our scope of review is limited to a determination of whether the findings of fact of the Secretary are supported by substantial evidence, errors of law were committed, or constitutional rights were violated. *Zelno v. Lincoln Intermediate Unit No. 12 Board of Directors*, 786 A.2d 1022 (Pa.Cmwlth.2001).

8. Under due process, a limited pretermination hearing is required where an individual has a property right to employment as an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. The process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Antonini v. Western Beaver Area School District*, 874 A.2d 679 (Pa.Cmwlth.2005). Not only is Flickinger entitled to a pretermination hearing, Section 1126 of the Code, 24 P.S. § 11–1126, and Section 1127 of the Code, 24 P.S. § 11–1127, state that before a tenured professional employee is dismissed, he or she is entitled to notice of the charges against him and a public hearing before the board of school directors.

families of girls involved in a bloody fight earlier in the day. He also states that there was no willful neglect of duty because at the time he was dealing with the "fight" he reasonably believed that the gun report was being properly handled by Garrett and Rothermal and asserts there was no delay in the administrative response.

Section 1122(a) of the Code, 24 P.S. § 11–1122(a), which relates to causes for the termination of a professional employee provides that a professional employee can be discharged for "willful neglect of duties." In *Williams v. Joint Operating Committee of the Clearfield County Vocational Technical School*, 824 A.2d 1233, 1236 (Pa.Cmwlth.2003), we explained what is necessary to make out a charge of "willful neglect of duties" as follows:

The charge of willful neglect of duties as a valid cause for termination of a professional employee's contract was added by the 1996 amendment to Section 1122 of the Code. While there is a dearth of appellate case law interpreting this violation, the nature of this conduct is easily understood. In the context of a charge of persistent and willful violation of school laws, for example, this court has already explained that, pursuant to Section 1122, a willful violation requires "the 'presence of intention, and at least some power of choice.' " *Cowdery v. Bd. of Educ. of the Sch. Dist. of Philadelphia*, 110 Pa.Cmwlth. 164, 531 A.2d 1186, 1188 (1987) (citation omitted). Moreover, "neglect" has been defined as "1: to give little attention or respect to: DISREGARD 2: to leave undone or unattended to esp. through carelessness [.]" MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 775 (10th ed.2001). Consequently, a willful neglect of duties by a professional employee may also be defined as an intentional disregard of duties by that employee. We note that there is no requirement of a continuous course of conduct in this

charge as there is in the charge of persistent and willful violation of school laws. (Footnote omitted.)

■ In this case, Flickinger's failure to immediately respond to the report of a gun in the school was a choice that he made and constituted a willful neglect of duty. Flickinger acknowledged that based on his training weapons reports have the "utmost priority" for school administrators and that a "team" of two or more administrators should respond. Even assuming that the "fight" continued and could have escalated to one involving the girls' mothers, that would not have excused his failure to immediately deal with the report of a gun in the school because that, unlike bruises and scrapes that could have resulted from a fight, could have resulted in the deaths of students and staff. That outcome mandated Flickinger leave his office, take control of the crisis team and deal with the report of a gun in the school.

Even if dealing with the "fight" somehow excused his failure not to respond, the threat of an escalation of that fight had dissipated when the report was received. Based on the timing of the events in the record, V.B.'s mother left the middle school with V.B. and her sisters at 12:30 p.m.; at that point, no threat of escalation from the previous fight between R.K. and V.B. existed. The gun report was disclosed at roughly 12:35 p.m. and knowing that teams of at least two administrators were required to respond to crisis situations, Flickinger willfully delayed Rothermal's response to the gun report by repeatedly putting her off without any instruction as to what his intentions were for action. By not responding immediately to the gun in the school report and impeding others from responding, Flickinger was guilty of willful neglect of duty and his dismissal by the School Board and Secretary as middle school principal was supported by the record and is affirmed.

Because his due process rights were not violated and there was substantial evidence to make out the charge of willful neglect of duty, the Secretary's decision dismissing Flickinger as a professional employee is affirmed.

### ORDER

AND NOW, this *3rd* day of *May,* 2006, the order of the Pennsylvania Secretary of Education dated October 12, 2005, is affirmed.