IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Kensington-Arnold         :
School District,              :
            Appellant         :
                              :
      v.                      :   No. 1243 C.D. 2015
                              :   Argued: April 12, 2016
New Kensington-Arnold         :
Education-Association, PSEA/NEA :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: June 13, 2016

The New Kensington-Arnold School District (School District) appeals the order of the Court of Common Pleas of Westmoreland County (trial court) denying its petition to vacate an arbitration award. The award sustained the grievance filed by the New Kensington-Arnold Education Association, PSEA/NEA (Association) on behalf of Joseph Melnick and ordered Melnick reinstated to his position as teacher. The School District argues that the award does not draw its essence from the collective bargaining agreement (CBA) and that Melnick's reinstatement violates public policy. We affirm.

**Background**

In 2008, Melnick began employment with the School District as a middle school music teacher. He also served as assistant high school band director. Until his termination from employment, he received satisfactory ratings and had never been disciplined.

On April 3, 2013, Melnick was arrested[1] for possession of a sawed-off shot gun in violation of Section 908 of the Crimes Code, 18 Pa. C.S. §908,[2] a misdemeanor of the first degree; possession of 90 grams of marijuana in violation of Section 13(a)(16) of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-

---

[1] Melnick was arrested at approximately 11:00 p.m. and released on his own recognizance the following day.

[2] It provides, in relevant part:

> (a)   Offense defined.--A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.
>
> (b)   Exceptions.—
>
>> (1)   It is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that, with the exception of a bomb, grenade or incendiary device, he complied with the National Firearms Act (26 U.S.C. § 5801 et seq.), or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.
>
> \*\*\*
>
> (c)   Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Firearm." Any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.
>
> "Offensive weapons." Any bomb, grenade, machine gun, sawed-off shotgun with a barrel less than 18 inches, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, any stun gun, stun baton, taser or other electronic or electric weapon or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa. C.S. §908(a), (b)(1) and (c).

113(a)(16),[3] an ungraded misdemeanor;[4] and possession of drug paraphernalia, *i.e.*, a water pipe, in violation of Section 13(a)(32) of the Drug Act, 35 P.S. §780-113(a)(32),[5] an ungraded misdemeanor. The next day, School District Superintendent, John E. Pallone, placed Melnick on unpaid leave, pending further investigation and a final determination on the criminal charges.

On April 10, 2013, Superintendent Pallone learned that a preliminary hearing on Melnick's criminal charges would take place on April 24, 2013. The School District then scheduled Melnick's *Loudermill* hearing[6] for April 17, 2013. The Association, on behalf of Melnick, requested the Superintendent to postpone the *Loudermill* hearing until after the preliminary hearing. In response to the Superintendent's stated concern about postponing the *Loudermill* hearing, the

---

[3] It prohibits:

> Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. §780-113(a)(16).

[4] "A crime declared to be a misdemeanor, without specification of degree, is of the third degree." 18 Pa. C.S. §106(b)(9).

[5] It prohibits:

> The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. §780-113(a)(32).

[6] A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

Association acknowledged "that you are not violating any of [Melnick's] due process rights by postponing his Loudermill hearing at our request." Reproduced Record at 214a (R.R. __). Thereafter, the Association requested that the *Loudermill* hearing be continued until Melnick's criminal trial was concluded, and Superintendent Pallone agreed.

Melnick's criminal charges were tried on February 24, 2014. Melnick was found not guilty of possession of a prohibited weapon but found guilty of marijuana and drug paraphernalia possession. R.R. 222a. The court sentenced Melnick to "County Probation Without Verdict" for 12 months on both charges. R.R. 223a.[7]

Melnick's *Loudermill* hearing took place on April 14, 2014. Superintendent Pallone recounted the criminal charges and Melnick's sentence of probation on the possession of marijuana and the water pipe. Melnick stated that he was the victim of unfortunate circumstances and wanted to get back to teaching.

On May 14, 2014, Superintendent Pallone sent Melnick a letter. School District Exhibit 11; R.R. 225a. The letter stated that the School District was seeking to have the Board of School Directors dismiss Melnick and that he had "the right to demand a hearing" by May 29, 2014. *Id.* Superintendent Pallone's letter stated that if Melnick did not so demand by May 29, 2014, his right to a hearing would be waived. *Id.* The letter also stated that Melnick's conviction

---

[7] In Westmoreland County "Probation Without Verdict" means that the guilty verdicts are deferred and if the defendant successfully completes probation the charges are dismissed without an adjudication of guilt or conviction. If the terms of probation are violated, the judgment may be entered and the defendant resentenced. http://www.co.westmoreland.pa.us/index.aspx?NID=271 at "Petition for Probation Without Verdict" (last viewed March 18, 2016).

4

for possession of a controlled substance and possession of drug paraphernalia prompted the School District's proposed dismissal. On May 22, 2014, Melnick informed the School District that he did not desire a hearing before the School Board but, instead, would proceed by grievance arbitration.

On May 29, 2014, the School Board terminated Melnick's employment on grounds of immorality. Superintendent Pallone advised Melnick of his termination by letter of June 5, 2014.

On October 14, 2014, the grievance arbitration hearing was held. The Association argued that Melnick's suspension without pay and without a prior hearing violated his constitutional right to a hearing before the deprivation of his property right in his employment with the School District. The Association also argued that the School Board did not give him a valid statement of charges or notice of hearing, as required by the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§1-101 - 27-2702.

Superintendent Pallone and Melnick testified at the arbitration hearing. Superintendent Pallone recounted the procedural history of the matter and the notices sent to Melnick, as outlined above. Melnick provided a factual recount of his arrest.

Melnick testified that he lived with his brother. On April 3, 2013, the police appeared at their home to question his brother, who was a suspect in a hit-and-run accident. The police searched their home, finding marijuana in a locked ammunition box that had belonged to Melnick's uncle, who had been a police officer. Police arrested Melnick and his brother.

5

Melnick explained that after his uncle died, his aunt gave her husband's guns[8] and a box of ammunition with 700 rounds of loose ammunition to Melnick. Melnick testified that he had no idea that marijuana was also in his uncle's box. Melnick also testified that the vaporizer police seized was not drug paraphernalia. Melnick stated that he used the vaporizer to ingest powdered chamomile as an herbal sleep aid. He also used the vaporizer to infuse damiana, a flower, which he believed to be a natural muscle relaxer. All these items were lawful to possess.

Melnick testified that his successful completion of probation will expunge his criminal record. His probation requires regular drug screenings, and all have been negative. It also requires a consultation with a behavioral health specialist, who has determined that Melnick did not need treatment for drug dependence.

The Arbitrator determined that the School District violated Melnick's due process rights by suspending him without pay without first giving him a *Loudermill* hearing. The Arbitrator awarded back pay for the period April 4, 2013, through April 16, 2013. Because Melnick asked to postpone the *Loudermill* hearing, the Arbitrator did not award back pay from April 17, 2013, through May 29, 2014. The Arbitrator reinstated Melnick to his former position as of May 29, 2014, the date by which Melnick had to exercise his right to a School Board

---

[8] At his criminal trial Melnick testified that the sawed-off shotgun had been owned by his uncle. Melnick claimed he did not alter the weapon. Because Melnick was found not guilty of the weapons charge, this charge was not addressed at the grievance arbitration hearing.

6

hearing.[9] The order of reinstatement included back pay and benefits. The Arbitrator concluded the School District's statement of charges was defective because it was issued by Superintendent Pallone, not the School Board, and did not specify a time and place for a hearing. To correct the failure to follow the procedures in the Public School Code for discharging or suspending a teacher, the Arbitrator ordered Melnick's reinstatement. At that point, the School Board could institute the process for dismissal required by the Public School Code, if it so desired.

The School District petitioned to vacate the arbitration award. It argued to the trial court that Melnick had waived his *Loudermill* rights. Further, the reinstatement of a teacher convicted of a drug offense violated public policy, and, thus, was beyond the power of the Arbitrator to award. The trial court rejected these claims.

The trial court held that the award drew its essence from the CBA, which, *inter alia*, guaranteed Melnick the rights established in the Public School Code. These rights include the opportunity to be heard prior to discipline being imposed and the right to a notice of a hearing and statement of charges issued by the school board before a dismissal. The School District's deviation from the procedures mandated by the Public School Code violated the CBA.

As to the public policy exception to the essence test, the trial court concluded that the School District failed to show there is a public policy requiring the dismissal of a teacher, who has been denied due process, because of the

---

[9] Because the Arbitrator held that the School District's letter was invalid, arguably he could have reinstated Melnick to May 14, 2014, *i.e.*, the date of the letter. Melnick does not challenge the date of his reinstatement.

teacher's possession of marijuana and drug paraphernalia. The trial court denied the petition to vacate the Arbitrator's Award.

## Issues on Appeal

On appeal, School District raises four issues. First, it argues that the arbitration award does not draw its essence from the CBA because once an employee elects to pursue a grievance, the procedures in the Public School Code become irrelevant. Second, it argues that the award does not draw its essence from the CBA because Melnick expressly waived his *Loudermill* rights. Third, it argues that Melnick's due process rights were not violated by his suspension without pay because he had been charged with a felony. Fourth, it argues that the award violates public policy. We address these issues *seriatim*.

## Standard of Review

The standard of review in a challenge to a labor arbitration award under the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301, is deferential. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 743 A.2d 405, 413 (Pa. 1999). The so-called "essence test" has been articulated as follows:

> Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an Arbitrator's award where the award indisputably

8

and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Cheyney University*, 743 A.2d at 413 (internal footnotes omitted). With these principles in mind, we turn to the merits of the School District's appeal.

### Election of Remedies

In its first issue, School District argues that once an employee chooses to challenge his dismissal by grievance, the dismissal procedures in the Public School Code become irrelevant. Those procedures require the school board to issue a written statement of charges and to notify the teacher of the time and place of the hearing on those charges. The School District contends that its deviations from these procedures became moot once Melnick chose arbitration. The Association responds that the Public School Code procedures are mandatory and must be followed up to the point that the professional employee makes a choice of remedy. It contends that the School District's deviations from the Public School Code procedures violated the CBA.

We begin with a review of the applicable provisions of the Public School Code. Section 1127 states as follows:

> *Before any professional employe* having attained a status of permanent tenure *is dismissed by the board of school directors, such board* of school directors *shall furnish such professional employe with a detailed written statement of the charges* upon which his or her proposed dismissal is based *and shall conduct a hearing*. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor

9

later than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense. Any such hearing may be postponed, continued or adjourned.

24 P.S. §11-1127 (emphasis added). Also relevant is Section 1133 of the School Code, which states as follows:

Nothing contained in sections 1121 through 1132 shall be construed to supersede or preempt a provision of a collective bargaining agreement in effect on July 23, 1970, or on any date subsequent thereto, negotiated by a school entity and an exclusive representative of the employes in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act," which agreement provides for the right of the exclusive representative to grieve and arbitrate the validity of a professional employe's termination for just cause or for the causes set forth in section 1122 of this act; however, no agreement shall prohibit the right of a professional employe from exercising his or her rights under the provisions of this act except as herein provided. *However, if within ten (10) days after the receipt of the detailed written statement and notice as required by section 1127*, the professional employe chooses to exercise his or her right to a hearing, any provision of the collective bargaining agreement relative to the right of the exclusive representative to grieve or arbitrate the termination of such professional employe shall be void. *Professional employes shall have the right to file a grievance under the collective bargaining agreement or request a hearing pursuant to section 1121 through 1132, but not both*.

24 P.S. §11-1133 (emphasis added).

The Pennsylvania Supreme Court has long held that a school board "must strictly follow the procedure set forth in Section 1127 for dismissal of professional employes." *Board of School Directors of Abington School District v. Pittenger*, 305 A.2d 382, 386 (Pa. 1973) (statement of charges issued by

10

superintendent, not the school board, was invalid, requiring reinstatement of employee). The only way to cure a failure to follow the procedure in Section 1127 is a "do over." As this Court has explained:

> When a governmental body fails to give the required due process or statutory hearing, the remedy is not to dismiss the charges against the individual but to rescind the action and then give the employee any due hearing and statutory hearings required. While [the employee's] initial dismissal was fatally flawed, it was cured by the "do over" when he was reinstated by the [school district] on October 27, 2004, suspended, charges were filed, hearings were held and a *de novo* review was conducted before the Secretary, all of which provided him with all the process that he was due before he was terminated.

*Flickinger v. Lebanon School District*, 898 A.2d 62, 66 (Pa. Cmwlth. 2006) (citations omitted). *See also Neshaminy School District v. Neshaminy Federation of Teachers*, 84 A.3d 391, 396-97 (Pa. Cmwlth. 2013) (summarizing cases imposing strict compliance with procedures in Section 1127 of the Public School Code).

Noting that Section 1127 of the Public School Code, 24 P.S. §11-1127, expressly states that it does not "supersede or preempt" a collective bargaining agreement, the School District argues that Melnick's grievance left the Arbitrator with a narrow issue, *i.e.*, the merits of his dismissal. It argues that the Arbitrator lacked authority to consider whether Melnick's *Loudermill* rights or the Public School Code had been violated.

The Association counters that the procedures followed by the School District to institute Melnick's dismissal, including his suspension without a *Loudermill* hearing, fell within the scope of the grievance. In support, it points to this Court's holding that

11

Section 1121 of the [Public] School Code requires that all contracts between school districts and professional employees contain a clause stating that none of the provisions of the Public School Code may be waived by school district employees.[10]

*Mifflinburg Area Education Association v. Mifflinburg Area School District*, 724 A.2d 339, 342 (Pa. 1999).

Lest there be any doubt, Article IV of the CBA between the School District and the Association contains a "Statutory Savings Clause" and a "Just Cause Provision" that state as follows:

A. Statutory Savings Clause

> Nothing contained herein shall be construed to deny or restrict to any professional employee such rights as he may have under the Public School Code of 1949, as amended, or the Public Employe[] Relations Act, Act 195, *or other applicable laws and regulations*.

B. Just Cause Provision

> No professional employee shall be disciplined, reprimanded, given disciplinary time off, reduced in rank or compensation, furloughed (suspended), discharged, or deprived of any professional advantage in connection with his/her primary professional assignment without just cause. Any such action asserted by the Board or any agent or representative thereof, shall be subject to the grievance procedure herein set forth. All information forming the basis for disciplinary action will be made available to the professional employee(s) involved and, with his/her consent, the Association.

---

[10] Section 1121(c) provides that all contracts with employees satisfactorily completing three years of service contain the following clause:

> This contract is subject to the provisions of the "Public School Code of 1949" and the amendments thereto.

24 P.S. §11-1121(c).

12

R.R. 178a-79a (emphasis added).

Because Melnick's rights under the Public School Code and under the United States Constitution were expressly made part of the CBA, the Association contends that the award was rationally derived from the CBA and must be confirmed by this Court. We agree with the Association.

Article IV, Section B of the CBA prohibits the discipline or discharge of any employee without just cause. The Arbitrator found that the School District lacked just cause to suspend Melnick without pay in advance of a *Loudermill* hearing. This falls within the ambit of Article IV.A of the CBA, which expressly preserved Melnick's constitutional due process rights under "other applicable laws." R.R. 178a.

Likewise, the School District deprived Melnick of his rights under Section 1127 of the Public School. First, Superintendent Pallone, not the School Board, issued the written statement of charges.[11] Second, the notice did not set forth a hearing date. Instead, it stated that Melnick could request a hearing and that his failure to do so would result in a waiver of his rights under the Public School Code. These rights were expressly preserved in the Savings Clause of the CBA, which does not state they will be waived by choosing a grievance. Third, Section 1133 of the School Code, which authorizes a teacher to challenge his dismissal by grievance instead of a School Board hearing, expressly mandates the issuance of a Section 1127 written notice of charges and hearing before the choice of remedy is made.

---

[11] The notice did not specify that Melnick's conduct constituted "immorality," a dischargeable offense under the Public School Code. However, the Arbitrator found that the listing of the criminal charges was sufficient to inform Melnick of the claim being made against him.

13

The Arbitrator determined that the only way to cure the School District's deprivation of Melnick's procedural rights under the Constitution and the Public School Code was a "do over," and this determination is fully consonant with case law.[12] Accordingly, we reject the School District's contention that the Arbitrator lacked authority to compel the School District to comply with the dismissal procedures set forth in the Public School Code or that the award does not draw its essence from the CBA.

**Waiver of Pre-Suspension Hearing**

In its second issue, the School District asserts that Melnick knowingly waived his *Loudermill* rights in exchange for having his hearing continued until after his criminal trial. The Association responds that it never agreed that the School District's suspension without pay on April 4, 2013, was authorized. Rather, the Association agreed only that a delay of Melnick's *Loudermill* hearing to a later date would not constitute a separate due process violation.

When the Association asked to continue the April 17, 2013, *Loudermill* hearing, the School District responded with the following proviso:

> [Continuing the] meeting to a later date is agreed to so long as the [Association] agrees that the [School District] has meet [sic] the requirements of a timely and proper Loudermill Letter/Notice and that the [Association] further agrees that [Melnick's] right to due process as it relates to this matter has not been violated. As you know, a 'Loudermill hearing' is part of the due process requirement that must be timely provided to a government employee prior to removing or impacting the

---

[12] The School District raises an additional argument that Melnick's election of the grievance remedy renders the failure of the School Board to set a hearing date inconsequential. The Statement of Charges signed by Superintendent Pallone is a fatal defect necessitating Melnick's reinstatement, regardless of the outcome of this issue. Thus, we need not address this argument.

14

employment property right including but not limited to imposing severe discipline and/or severance.

R.R. 215a. To this, the Association responded that it "acknowledges that you are not violating any of [Melnick's] due process rights by postponing his Loudermill hearing at our request." R.R. 214a.

At issue are two weeks of backpay, *i.e.*, from April 4, 2013, through April 16, 2013. The Arbitrator determined that Melnick was entitled to pay for that period of time because his pay was suspended without just cause. The Arbitrator rejected the School District's contention that the Association's acknowledgement was a complete waiver of Melnick's *Loudermill* rights. Instead, the Arbitrator, whose findings are entitled to great deference, found that the waiver only applied to the period of time the postponement was sought. We agree.

The Association agreed that due process was not violated "by postponing his Loudermill hearing[.]" R.R. 214a. This agreement cannot be reasonably construed to mean that the Association waived its contention that Melnick's suspension lacked just cause because it was done without first conducting a *Loudermill* hearing.

### Scope of *Loudermill* Hearing Requirement

In its third issue, the School District contends that Melnick's *Loudermill* rights were not violated because he was charged with a felony, *i.e.*, the prohibited weapons charge. The School District contends it may suspend any employee charged with a felony, without pay and without a prior hearing.

Neither of Superintendent Pallone's letters to Melnick stated that his suspension was prompted by a felony charge. Further, the School District offered no evidence that the weapons charge, if proved, would constitute a felony. The

15

weapons charge was brought pursuant to Section 908 of the Crimes Code, which identifies the crime as a "misdemeanor of the first degree." 18 Pa. C.S. §908(a).[13] Further, the weapons charge is listed on the magisterial district criminal docket sheet as grade "M1." School District Exhibit 1.[14] It is also listed on the sentencing order as "M1." School District Exhibit 8; R.R. 223a. The School District's claim that Melnick had been charged with a felony is baseless. In any case, Melnick was cleared of the weapons charge.

## Public Policy

In its final issue, the School District argues that the Arbitrator lacked subject matter jurisdiction to determine whether Melnick's termination was for "just cause" because Melnick's reinstatement eviscerates the ability of the School District to enforce the public policy of the Commonwealth. The School District contends that there is a well-defined, dominant and compelling policy of removing teachers with a drug history from contact with children. In support, it relies upon *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA-NEA*, 72 A.3d 755 (Pa. Cmwlth. 2013).

In *Westmoreland*, a teacher was found unconscious in a school restroom as a result of a drug overdose. The teacher was terminated for

---

[13] It states as follows:

> (a) Offense [of prohibited offensive weapon] defined.—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

18 Pa. C.S. §908(a).

[14] School District Exhibit 1 was not included in the reproduced record. It is located at Item #17 of the certified record.

immorality, and she challenged the termination through grievance arbitration. The arbitrator found just cause for her termination but also found the teacher's unblemished 23-year tenure with the school district warranted her reinstatement, subject to conditions involving rehabilitation treatment programs. On appeal, this Court set aside the award. We held that the arbitrator's reinstatement violated the "public policy of educating our children about the dangers of illicit drugs and drug abuse and protecting children from exposure to drugs and drug abuse[.]" *Westmoreland*, 72 A.3d at 759. We concluded that "reinstat[ing] an employee who attended work while under the influence, while charged with the duty of overseeing young children, with the hope she will overcome her addiction, defies logic and violates public policy" and that "an elementary classroom is no place for a recovering addict." *Id*.

The Association counters the School District's reliance on the public policy exception is completely misplaced. The Arbitrator did not hold that Melnick could not be dismissed for his criminal convictions. Instead, the Arbitrator found that Melnick had to be reinstated because the School District deprived him of procedural safeguards mandated by the Public School Code. As such, the School District would have to show that there is a public policy that the School District need not reinstate a teacher found to possess marijuana and drug paraphernalia where the School District has dismissed the teacher in violation of due process and the Public School Code. There is no such public policy.

An arbitration award will not be upheld if it contravenes public policy. *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 413 (Pa.

17

Cmwlth. 2011). In *City of Bradford*, we set forth a three-step analysis to be used when considering whether an award violates public policy:

> First, the nature of the conduct leading to the discipline must be identified. Second, we must determine if that conduct implicates a public policy which is well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. Third, we must determine if the Arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the Arbitrator.

*Id.* at 414 (internal citations omitted).

To accept School District's argument, we would have to find that there is a well-defined, dominant public policy against reinstatement of a teacher convicted of two misdemeanor charges of possessing marijuana and drug paraphernalia. As noted by the trial court, the School District did not show such a "clearly articulated" public policy. There was no showing that a teacher in Melnick's situation presents an unacceptable risk to school students. Notably, the Public School Code expressly lists the criminal offenses that do warrant the dismissal of professional employee, and Melnick's offenses are not included in that list.[15]

---

[15] Section 111 of the School Code provides, in relevant part:

> (e)  No person subject to this act shall be employed or remain employed in a public or private school, intermediate unit or area vocational-technical school where a report of criminal history record information or a form submitted by an employe under subsection (j) indicates the person has been convicted of any of the following offenses:
>
> > (1)  An offense under one or more of the following provisions of
> > Title 18 of the Pennsylvania Consolidated Statutes:

**(Footnote continued on the next page . . .)**

**(continued . . .)**

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 2709.1 (relating to stalking).

Section 2901 (relating to kidnapping).

Section 2902 (relating to unlawful restraint).

Section 2910 (relating to luring a child into a motor vehicle or structure).

Section 3121 (relating to rape).

Section 3122.1 (relating to statutory sexual assault).

Section 3123 (relating to involuntary deviate sexual intercourse).

Section 3124.1 (relating to sexual assault).

Section 3124.2 (relating to institutional sexual assault).

Section 3125 (relating to aggravated indecent assault).

Section 3126 (relating to indecent assault).

Section 3127 (relating to indecent exposure).

Section 3129 (relating to sexual intercourse with animal).

Section 4302 (relating to incest).

Section 4303 (relating to concealing death of child).

Section 4304 (relating to endangering welfare of children).

Section 4305 (relating to dealing in infant children).

A felony offense under section 5902(b) (relating to prostitution and related offenses).

Section 5903(c) or (d) (relating to obscene and other sexual materials and performances).

Section 6301(a)(1) (relating to corruption of minors).

Section 6312 (relating to sexual abuse of children).

Section 6318 (relating to unlawful contact with minor).

**(Footnote continued on the next page . . .)**

*Westmoreland* is distinguishable. In that case, the teacher was found unconscious at a time when she was supposed to be in the classroom teaching her elementary school students. Her acknowledged drug addiction and drug use at school posed a threat to the students. By contrast, there is no evidence that Melnick possessed or ingested controlled substances or illegal drugs on school property.

## Conclusion

We hold that the Arbitrator's award drew its essence from the CBA and that his reinstatement of Melnick to his teaching position as of May 29, 2014, did not violate public policy. Accordingly, we affirm the trial court's denial of the School District's petition to vacate the arbitration award.

_____
MARY HANNAH LEAVITT, President Judge

Judge Simpson concurs in the result only.

---

**(continued . . .)**

> Section 6319 (relating to solicitation of minors to traffic drugs).
>
> Section 6320 (relating to sexual exploitation of children).

(2) An offense designated as a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as "The Controlled Substance, Drug, Device and Cosmetic Act."

(3) An offense similar in nature to those crimes listed in clauses (1) and (2) under the laws or former laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation, or under a former law of this Commonwealth.

24 P.S. §1-111.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Kensington-Arnold       :
School District,              :
          Appellant    :
                          :
        v.            :    No. 1243 C.D. 2015
                          :
New Kensington-Arnold       :
Education-Association, PSEA/NEA  :

## **O R D E R**

AND NOW this 13th day of June, 2016, the order of the Court of Common Pleas of Westmoreland County, dated June 30, 2015, in the above-captioned matter, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge