DISSENTING OPINION BY
JUDGE McCullough
I respectfully dissent because I believe that the Arbitrator’s award in this case, insofar as it reinstated Sheena Boone-East (Grievant), a school bus driver who knowingly and intentionally ingested an unprescribed Schedule II narcotic containing amphetamines the day before she was scheduled to drive a school bus and tested positive three days later, violates a well-defined, dominant public policy of protecting school children from illegal drugs/drug use and ensuring their safety.
While the Arbitrator described Griev-ant’s actions as a mere “misadventure” that was not likely to be repeated, Arbitrator’s op. at 10, the fact that Grievant’s actions in this case posed a threat to the students that she was entrusted to transport to and from school cannot be overlooked. Grievant made a considered decision to ingest the Schedule II narcotic on a Sunday evening and work the next three days as a school bus driver while the narcotic remained in her system, which is expressly prohibited by section 16.1(3) of the collective bargaining agreement (CBA) between Upper Merion Area School District (the District)- and Teamsters Local # 384, the union that represented Griev-ant, as well the drug and alcohol policy enacted by the District. Section 16.1(3) of the CBA states that the District has the right to immediately suspend or discharge any employee who is “under the influence of liquor or drugs during work time, including lunch time.” (Reproduced Record (R.R.) at 100a.) Section 810.1(4) of the District’s drug and alcohol policy mandates random drug and alcohol testing and authorizes the District to impose discipline, up to and including discharge, for a violation of the policy. (R.R. at 216a.)
Although Grievant did not ingest her son’s Adderall on school property or during school hours, she did so on a Sunday evening, June 9, 2013, less than 24 hours before she knew she would be required to report to work as a school bus driver. Grievant transported students for the next three days, June 10, 11, and 12, 2013. The fact that she may not have appeared im *68 paired to her supervisor or co-workers is simply not relevant. The amphetamines she ingested remained in her system the entire time, as.evidenced by her positive test on June 12, 2013, three days after taking her son’s medication.
The District has an absolute obligation to ensure the safety and welfare of all students as it stands in loco parentis to pupils “during the time they are in attendance, including the time required in going to and from their homes.” Section 1317 of the Public School Code of 1949, Act of March. 10,1949, P.L. 30, as amended, 24 P.S. § 13-1317 (emphasis added). In order to ensure that obligation, the -District enacted School Board Policy 810.1, entitled “Drug/Alcohol Testing — Covered Drivers.” As noted above, section 810.1(4) of this policy mandates that the District require covered drivers, such as Grievant, to- submit to random testing for drugs and alcohol, and' authorizes the District to discharge an employee for a violation of the policy. (R.R. at 216a.) Moreover, as the Majority recognizes, Rita Lebo, a director and custodian of records at WORKNET, the facility that administered Grievant’s drug test, testified before the Arbitrator that "United States Department of Transportation regulations recognize a bus driver as a safety sensitive position- and mandate drug testing for five classes of drugs, one of which is amphetamines. (R.R. -at 33a.)
Further, I believe that the reliance of the Majority on Blairsville-Saltsburg School District v. Blairsville-Saltsburg Education Association, 102 A.3d 1049 (Pa. Cmwlth. 2014), appeal denied, 631 Pa. 715, 109 A.3d 680 (2015), and New Kensington-Arnold School District v. New Kensington-Arnold Education Association, 140 A.3d 726 (Pa. Cmwlth. 2016), is misplaced, as those matters are distinguishable from the present case.
In Blairsville-Saltsburg School District, the grievant’s conduct, drunk driving, occurred during non-school hours and did not place any students in harm’s way. The same is true of New Kensington-Arnold School District. The grievant in that case was charged with possession of marijuana and drug paraphernalia following discovery of the same at his home in the course of an investigation involving, his brother. The grievant’s actions did not occur on school property or endanger any students. To the contrary, Grievant herein ingested an unprescribed Schedule II narcotic, albeit at home, and drove a school bus the following three consecutive days. By operating the school bus with amphetamines in her system, Grievant endangered the lives of every student she transported. during those days. .
The Majority aptly recognizes that a reviewing court is generally bound by an arbitrator’s findings. Blairsville-Saltsburg School District, 102 A.3d at 1052. However, even accepting the facts as found by the Arbitrator, Grievant’s actions here placed the school children under her care, and whom the District has an -absolute duty to protect, at risk both to their general safety and 'their exposure to illegal drugs and drug use. Fortunately, in this case, Grievant was able to perform her duties without incident, even though the amphetamines remained in her system as of the date of her-drug-test three days later. Nonetheless, we cannot allow the lack of any incident -to undermine the implicated public policy described above. Indeed, a school district should not have to wait until a school bus driver ingests other illicit drugs, whether or not in the form of a prescribed or-unprescribed'narcotic substance, to the point where he/she becomes so impaired that, the'safety of school children is jeopardized and/or an accident oc *69 curs before invoking this public policy exception.
For these reasons, I believe that application of the public policy exception is warranted in this case and I would reverse the order of the Court of Common Pleas of Montgomery County denying the District’s petition for review seeking to vacate and set aside the Arbitrator’s award.