**ABINGTON SCHOOL DISTRICT,**
**Appellant,**

v.

**ABINGTON SCHOOL SERVICE**
**PERSONNEL**
**ASSOCIATION/AFSCME.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1999.

Decided Jan. 13, 2000.

Justin M. O'Donoghue, Blue Bell, for appellant.

Eric M. Fink, Philadelphia, for appellee.

Before PELLEGRINI, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

Abington School District (District) appeals from the order of the Court of Common Pleas of Montgomery County (trial court) denying the District's petition for review of the arbitrator's award which modified the District's discipline of Joseph A. Miller (Grievant) from a demotion from group leader to painter and a five-day suspension to just a five-day suspension.

Grievant has been employed by the District as a painter for thirty-five years, and for the last eleven years was the group leader of a painting crew. In carrying out an assignment to paint a bus port, Grievant chose to use a paint sprayer but decided not to use protective sheeting that would prevent any residual spray from coming in contact with items that were not supposed to be painted because he felt

there was no wind and there would be no overspray. Incorrect in that assumption, overspray settled on twenty-six vehicles in the school parking lot and bus driveway. In the course of the ensuing investigation, Grievant stated that he had a conversation with Assistant Principal McGinley concerning when the painting was to occur, and also that he did not have the manual for the paint sprayer. However, the manual was easily located by a co-worker in a filing cabinet within his control. As a result of the overspray and purported misrepresentations, the District demoted Grievant from the group leader position to a regular painter and suspended him for five days.

Grievant's bargaining unit, Abington School Service Personnel Association/AFSCME (Association), then filed a grievance contesting the discipline which was denied, and the matter then was submitted to arbitration. At arbitration, the District contended that the demotion was not arbitratable because it fell within the discretionary authority of the District, but the Arbitrator rejected that argument and proceeded to hear testimony. Because the overspray was not in dispute, the testimony centered on why Grievant did not use the protective sheeting. Grievant testified that he did not use protective sheeting because in his experience, it was not needed as it was an almost calm day and any wind was blowing away from any object that would have been affected by the overspray. Other members of his crew testified that they did not object to not hanging protective sheeting because of the weather, but one member testified he told Grievant that it "wouldn't hurt." As to his misrepresentation that he had a conversation with the Assistant Principal, Grievant testified that he retracted that statement during the investigation, noting that it was not him but his crew members that had the conversation. As to the manual, he

stated he did not have it because he could not find it. While finding Grievant's initial misrepresentation regarding his conversation with the Assistant Principal inconsequential, and his statement regarding his manual not an intentional misrepresentation but "at worst" the result of his being "careless" and "lazy" in looking for it, the Arbitrator found that Grievant was guilty of inattention in allowing the overspray.

As to the discipline to be imposed, noting that the demotion was considered by the district to be in the nature of discipline for his poor judgment causing the overspray, the Arbitrator found that the parties had established a "progressive discipline procedure" under Article XII, Section 1 of the Collective Bargaining Agreement which provided the following:

> With the exception of serious offenses which call for immediate discharge, it is the School District's intention to follow the theory of progressive discipline. Because offenses vary in seriousness, it is impractical to detail with particularity the exact nature of the progressive discipline. Most minor infractions shall first be handled with oral warnings and counseling. If an employee's behavior persists, then a written warning or warnings may follow prior to an employee being suspended.

The Arbitrator found that although the Agreement provided for progressive discipline to be used, Grievant had not been the subject of any discipline during his employment and the demotion was excessive as a progressive disciplinary measure. She then modified the discipline to a five-day suspension only. The District appealed to the trial court which affirmed holding that the Agreement neither defined progressive discipline nor precluded an arbitrator from modifying the initial discipline that the District imposed. This appeal followed.[1]

---

1. Our scope of review of a grievance arbitration is the "essence test" such that an arbitrator's award will not be overturned if it can, in any rational way, be derived from the agreement between the parties. *Community College of Beaver County v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977).

The District contends that the Arbitrator's award does not derive its essence from the Agreement between the parties. More specifically, it argues that once the Arbitrator found that Grievant used poor judgment in not using protective sheeting, was lazy in looking for the operating manual for the sprayer, and misrepresented that he had a conversation with the Assistant Principal, the Arbitrator exceeded her authority when she eliminated the demotion from the discipline the District imposed. In making that argument, the District contends that Article I, Section 2 of the Agreement provides it with the sole jurisdiction to determine discipline. That Section provides:

> The Union recognizes the right of the Board to manage the affairs of the School district and to direct its working force. Except as otherwise provided in this Agreement, nothing shall be deemed to limit the Board in any way in the exercise of the customary functions of management, including the right to determine such areas of discretion or policy as the functions and programs of the School District, its standards of services, its overall budget, the utilization of technology, the organizational structure, the selection of personnel and the maintenance of discipline, order and efficiency in the School District. The Board shall have the right to publish reasonable rules and regulations from time to time that it may consider necessary and proper for the conduct of its business, provided the same are not inconsistent with the terms of this Agreement.

It argues that this provision addresses discipline and discharge for violations of its rules and regulations and because the "maintenance of discipline" is a matter reserved to it, it has the power to decide whether to demote Grievant for incompetent performance.

An arbitrator generally has the power, and specifically under this Agreement, to interpret its provisions. See Article 1, Section 3 of the Agreement.[2] *See also Conneaut School Service Personnel Association v. Conneaut School District,* 96 Pa.Cmwlth. 586, 508 A.2d 1271 (1986) and we will not reverse unless the interpretation of the agreement fails to draw itself from the essence of the agreement. Regarding whether arbitrators have correctly decided that they had the power to modify discipline imposed by the employer under the Agreement, we have held that where the agreement does not specifically define or designate the discipline to be imposed, and does not specifically state that the employer is the one with sole discretion to determine the discipline, the arbitrator is within his or her authority in construing the agreement to modify the discipline imposed to reflect a reasonable interpretation of the agreement. *School District of Springfield Township v. Springfield Township Educational Support Personnel Association,* 711 A.2d 602 (Pa.Cmwlth.1998); *Upper St. Clair School District v. Upper St. Clair Educational Support Personnel Association, ESPA, PSEA, NEA,* 168 Pa.Cmwlth. 1, 649 A.2d 470 (1994).

Addressing what type of provision gives the employer sole discretion to determine discipline, in *International Brotherhood of Firemen and Oilers, Local 59 v. Township of Falls,* 688 A.2d 269, 271 (Pa.Cmwlth. 1997), we held that an arbitrator had the power to modify discipline where the language reserving to the employer "the right to take proper disciplinary action for violation of established rules and regulations" because it was insufficient to reserve to the employer sole jurisdiction of disciplinary determinations. For the discipline imposed not to be subject to arbitration, the language must be similar to that in *Board of Education of the School District of Phil-*

---

**2.** Article 1, Section 3 of the Agreement provides that "Arbitration ... shall be the sole and exclusive remedy available to the Union for the final settlement of any differences or disputes under this Agreement."

adelphia v. Philadelphia Federation of Teachers, AFL–CIO, 147 Pa.Cmwlth. 15, 610 A.2d 506 (1992)[3] which specifically reserved to the district disciplinary matters provided for under the Pennsylvania School Code.[4]

■ Here, as in *International Brotherhood*, Article I, Section 2 of the Agreement does not have language specifically reserving the imposition of discipline to the sole discretion of the District such as to preclude the arbitrator's determination that she could modify the discipline. Moreover, Article XII of the Agreement provides that only the most serious offenses will result in an immediate termination, and that most minor infractions are handled through oral warnings and counseling. For all other offenses, progressive discipline is to be followed, but the Agreement does not define "progressive discipline." "Because offenses vary in seriousness, it is impractical to detail with particularity the exact nature of the progressive discipline." Because the Agreement does not define any of these terms or limit the Arbitrator's authority, what constitutes a serious or minor offense and the penalty to impose for an offense calling for progressive discipline are within the Arbitrator's authority to determine; as such, the Arbitrator had the authority to decide that the demotion was to punish Grievant for not using the protective sheeting to stop the overspray, not a simple personnel action as well as modifying the discipline that the District imposed. As a result, the Arbitrator did not exceed her authority in rescinding the demotion and imposing a five-day suspension.

■ Even if her decision is derived from the essence of the Agreement, the District contends that the Arbitrator's modification of the penalty and rescinding the demotion was "manifestly unreasonable" because she found that Grievant initially misrepresented that he spoke to the Assistant Principal regarding when to paint, was lazy in looking for the manual, and showed poor judgment in not using protective sheeting, and implied that the District bargained away it authority to demote employees for such conduct. While an arbitrator's decision can be reversed when the penalty based on "found facts" is "manifestly unreasonable," *Crawford County*, 693 A.2d at 1389, it is only applicable where found conduct involved is criminal or it breaches a duty that could harm the public. *See e.g., Greene County v. District 2, United Mine Workers of America*, 736 A.2d 52 (Pa.Cmwlth.1999) (arbitrator's award reversing a dismissal of a Children and Youth Services employee whose conduct jeopardized the welfare of children by failing to keep accurate and prompt records manifestly unreasonable); *Philadelphia Housing Authority v. Union Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983) (arbitrator's award reinstating a security guard in Housing Authority project who defrauded a tenant manifestly unreasonable); *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989) (holding that the arbitrator could not modify the LCB's termination of an employee for theft of Commonwealth funds). Claimant's conduct here, even if we put the District's "gloss" on it, is not the type of conduct that calls into play this exception to the essence test because it condones no criminal conduct, potential harm to the public, or is otherwise against

---

**3.** The agreement in *Board of Education of the School District of Philadelphia* provided that "the arbitrator shall have no power or authority to make any decision contrary to or inconsistent with terms of the agreement or applicable law or which limits or interferes with the powers and responsibilities of the District." *Board of Education of the School District of Philadelphia*, 610 A.2d at 508. This Court pointed out that the School Code provided that "the District shall ... have the right at any time to remove an employee for violation of any of the school laws of this Commonwealth or other improper conduct." *Id.*

**4.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 5–514.

public policy. *See City of Easton v. American Federation of State, County and Municipal Employees, AFL–CIO, Local 447,* 722 A.2d 1111 (Pa.Cmwlth.1998).

Accordingly, because it was within the Arbitrator's authority to modify the discipline imposed by the District, the order of the trial court is affirmed.

### *O R D E R*

AND NOW, this 13th day of January, 2000, the order of the Court of Common Pleas of Montgomery County dated May 25, 1999, at No.98–14870, is affirmed.