**BLUE MOUNTAIN SCHOOL DISTRICT**

v.

**Nancy SOISTER, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs, July 14, 2000.

Decided Aug. 29, 2000.

Joseph S. Sabadish, Harrisburg, for appellant.

Thomas J. Nickels, Pottsville, for appellee.

BEFORE: COLINS, Judge, PELLEGRINI, Judge, McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

Nancy Soister (Grievant) appeals from the order of the Court of Common Pleas of Schuylkill County (trial court) vacating an arbitrator's award that set aside Blue Mountain School District's (School District) termination of her employment and reinstating her without backpay.

Grievant was employed as a secretary for the Blue Mountain Elementary East School principal, Anthony Dooley. In May 1996, the School District dismissed Grievant for "just cause" as a result of three incidents of using her position in an inappropriate manner and one unfavorable job review. The unfavorable job review was the result of a March 12, 1996 special performance evaluation that stressed Grievant's typing errors. As to using her position in an inappropriate manner, the first incident occurred in March 1995 when the School District's Business Manager sent a memo to Principal Dooley suggesting that Grievant had discussed a substitute teacher's final schedule with the substitute without authorization. Because she opened the memo, she was aware of its substance and instead of discussing this accusation first with Principal Dooley, Grievant responded directly to the Business Manager. The second incident occurred at a February 22, 1996 School Board meeting where she announced an upcoming conference on the education of gifted children,[1] an event that she became aware of from reading Principal Dooley's mail. Grievant received a written reprimand for disregarding the confidentiality of his mail and disclosing information she received while serving as his secretary.

The final incident occurred in April 1996. Grievant was asked to send a notice to the parents of students in the gifted program who were to be reevaluated for inclusion in the program. Because of the impending retirement of the teacher of the gifted program, Grievant included with the notice an unauthorized personal request that the parents attend an evening meeting at the retiring teacher's church to informally discuss the status and developments of the gifted program. The meeting announcement was also sent to the parents of students not scheduled for reevaluation. In addition, Grievant also enclosed an unauthorized request for contributions for a gift for the retiring teacher. These notices

were sent to the parents by giving them to the student to take home. Because of Grievant's breach of confidentiality in obtaining the names of students in the gifted program, as well as the unauthorized use of the school mailing system and the other incidents mentioned, Principal Dooley recommended her dismissal to the Superintendent and School Board, leading ultimately to her termination.

The Blue Mountain Educational Support Personnel Association (Union) filed a grievance on her behalf objecting to the termination and leading to arbitration. The question presented to the Arbitrator was: "Was the discharge of Nancy Soister for just cause, and if not, what shall the remedy be?" The School District argued that if Grievant's conduct was found to violate school law and policy under the School Code, the arbitrator must uphold the dismissal. The Union, on the other hand, contended that just cause was the standard, and that the Arbitrator was free to consider culpability, mitigation and progressive discipline.

After a hearing, the Arbitrator found that Grievant's discharge was not for just cause. The Arbitrator did not consider the special evaluation to be of any significance in the dismissal, especially because Principal Dooley did not view the typing errors as grounds for dismissal. As to the other incidents, he found that Grievant's response to the allegation of her unauthorized disclosure to the substitute teacher was not viewed by Principal Dooley as warranting any discipline other then informing her that she acted improperly. As to the School Board meeting incident, Grievant received a written reprimand but it was not considered a dischargable offense.

As to the unauthorized notice sent to the parents of students in the gifted program, the Arbitrator determined that this was the event that caused the School District to terminate Grievant. While concluding

1. Grievant had three children enrolled in the          gifted program.

that Grievant acted improperly in using confidential records for the names and addresses of students and by sending an unauthorized notice of a private meeting concerning a school program with official school correspondence, the Arbitrator nonetheless found that this was not just cause for dismissal and ordered her reinstatement. He did so because the confidentiality of the names of the gifted students was not violated as those names were already known to Grievant and to the retiring teacher. He determined the appropriate penalty would, in effect, be a six month suspension because he ordered reinstatement without backpay and benefits.

The District appealed to the trial court asserting that because the Arbitrator found that Grievant committed the improper conduct, he did not have the authority to change the discipline, and that a modification of the penalty was not within the essence of the Collective Bargaining Agreement (CBA). Grievant argued that because the Arbitrator did not find just cause for dismissal, he was free under the authority granted in the CBA to determine what penalty, if any, was appropriate. Finding that it was "manifestly unreasonable" for the Arbitrator to reinstate Grievant because her use of confidential records and inclusion of a personal announcement with an official School District notice constituted egregious conduct, the trial court vacated the Arbitrator's award. Grievant then filed the instant appeal.

■■■ Grievant contends that the trial court erred in setting aside the Arbitrator's award because its decision is contrary to the "essence test." The "essence test" is the standard of review that is routinely applied in both the public and private sectors to review arbitration awards in grievance proceedings. It is used to review all awards under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301 (for other public "regular" and "special" employees, commonly referred to as Act 195). The "essence test" is that an arbi-

tration award will be upheld if the award "draws its essence from the collective bargaining agreement." *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Wilson),* 129 Pa.Cmwlth.392, 565 A.2d 1232, 1234 (1989) (citing *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977)). Stated more precisely, where the arbitrator's task has been to determine the parties' intention in drafting the collective bargaining agreement, then the arbitrator's award is based on a resolution of a factual dispute and "is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention ...'." *Leechburg Area School District v. Dale,* 492 Pa. 515, 520, 424 A.2d 1309, 1312 (1981) (quoting *Community College of Beaver County,* 473 Pa. at 594, 375 A.2d at 1275 (additional citation omitted)).

Recently our Supreme Court in *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA–NEA),* 560 Pa.135, 743 A.2d 405, 413 (1999), stated that in applying the essence test to determine if the award can be rationally derived from the collective bargaining agreement:

[A] reviewing court will apply a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective

bargaining agreement.[2]

Even more recently, in *Pennsylvania Game Commission v. State Civil Service Commission (Toth)*, 747 A.2d 887, 891 n. 7 (Pa.2000), our Supreme Court, *albeit* in *dicta*, "reiterat[ed] that the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable'." [3]

■ Applying the *State College and University Professional Association* two-prong standard to this case, because no one is disputing that the issue of whether there was just cause was before the arbitrator, only the second prong is at issue, *i.e.*, whether the arbitrator's interpretation that the unauthorized use of records and the mail system was not just cause for termination can be rationally derived from the collective bargaining agreement. In this case, the Arbitrator interpreted the "discharged for cause" language in the CBA [4] and the "just cause" issue presented for arbitration to mean that there must be just cause warranting a dismissal, not that any cause justifies any form of discipline. Having concluded that Grievant's use of school records and mail for unauthorized notices concerning a school program did not constitute just cause for her dismissal, only improper conduct, the Arbitrator then determined that he was permitted to review the penalty under the terms of the agreement. Because the CBA between the School District and the Union neither explicitly reserves to the School District sole discretion as to the penalty to be imposed, nor precludes that determination to be made by an arbitrator, the Arbitrator was permitted to set aside the termination and impose the penalty he thought appropriate. *Abington School District v. Abington School Service Personnel Association*, 744 A.2d 367 (Pa.Cmwlth.2000).

Although the trial court disagreed with the Arbitrator's conclusion of the severity of the improper conduct and we may agree with the trial court, because it is not irrational, we must give deference to the Arbitrator's finding that there was no just cause mandating Grievant's dismissal, only for discipline less than termination. The Arbitrator's setting aside the termination was not irrational and must be upheld.[5] Accordingly, the order of the trial court vacating the arbitrator's award is reversed.

---

**2.** However, in *State College and University Professional Association*, our Supreme Court also pointed out that "an arbitrator cannot sit as King[,]" and that the "[p]arties to a collective bargaining agreement rightfully presume that an arbitrator's decision will not be without basis nor the product of insanity." An award can still be vacated which, in effect, condones or excuses an employee's criminal act or acts causing serious public harm that it cannot rationally be consistent with the intent of the parties in entering the collective bargaining agreement. *See Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989); *Greene County v. District 2, United Mine Workers of America*, 736 A.2d 52 (Pa.Cmwlth.1999). For example, an arbitrator's award that finds that a teacher has molested students but yet reinstates could still be set aside because that outcome could not rationally be derived from the essence of the agreement.

**3.** The "manifestly unreasonable" test seems to come from the standard used in reviewing whether to reverse a trial court's determination not to grant a judgment n.o.v. A reviewing court will reverse a trial court ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case. *Timbrook v. Foremost Ins. Co.*, 324 Pa.Super. 384, 471 A.2d 891, 892 (1984). "An 'abuse of discretion' or failure to exercise sound discretion is not merely an error of judgment.... But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is *manifestly unreasonable* or lacking in reason, discretion must be held to have been abused." *In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960*, 527 Pa. 211, 590 A.2d 1, 3 (1991). (Emphasis added). *See Community College of Beaver County v. Community College of Beaver County*.

**4.** Article IX, Seniority, of the CBA.

**5.** Since our standard of review of an arbitrator's award is the same as that of the trial court, a remand is not necessary.

# ORDER

AND NOW, this 29th day of August, 2000, the order of the Court of Common Pleas of Schuylkill County, Pennsylvania at docket number S–2439–96 entered December 30, 1999, as amended by the Order of January 4, 2000, is reversed.

McCLOSKEY, Senior Judge, Concurring.

I am constrained to join the majority opinion as *stare decisis* requires the application of the "essence test." *See, e.g., State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). However, I write separately to emphasize my agreement with Justice Castille's concurring and dissenting opinion in *State System* and concurring opinion in *Danville Area School District v. Danville Area Education Assoc.*, —— Pa. ——, 754 A.2d 1255 (2000). In this regard, I believe Justice Castille correctly observed that:

> [T]he essence test should include a review to determine whether the arbitrator's decision is manifestly unreasonable. Such a standard protects against unbridled discretion by the arbitrator. When parties agree to arbitrate disputes, surely they do not contemplate a circumstance where unreviewable, manifestly unreasonable decisions will result. This approach allows for limited judicial review where the arbitrator's decision involves an issue that is arguably covered by the terms of the collective bargaining agreement, yet it is apparent that the decision was manifestly unreasonable.

*Danville,* op. at 1262.

Accordingly, although I deem an employee who violates rules of confidentiality to be a danger to the system, I must nevertheless join in the majority's opinion.