# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Merion Area School District,   :
                                            :

                     Appellant    :

                                            :

                   v.            : No. 887 C.D. 2015
                                            : Argued: February 8, 2017

Teamsters Local #384           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY JUDGE WOJCIK               FILED: June 23, 2017

Upper Merion Area School District (the District) appeals from the April 28, 2015 order of the Court of Common Pleas of Montgomery County (trial court) denying the District's petition to vacate an arbitration award that sustained the grievance of Sheena Boone-East (Grievant) in part and directed her reinstatement as a school bus driver for the District. We affirm.

Grievant began her employment with the District as a school bus driver in November 2011. At all relevant times, Grievant was a member of Teamsters Local #384 (Union), which is the exclusive bargaining agent for all school bus drivers in the District. The District and the Union were parties to a collective bargaining agreement with a term that began on July 1, 2011, and continued through June 30, 2016 (CBA).

Section 16.1(3) of the CBA states that the District has the right to immediately suspend or discharge any employee for "[d]rinking or consuming illegal drugs during working hours, including lunchtime, or being under the influence of liquor or drugs during work time, including lunch time." Reproduced Record (R.R.) at 100a. Additionally, in accordance with federal law and regulations, the District enacted School Board Policy 810.1, entitled "Drug/Alcohol Testing – Covered Drivers." R.R. at 215a. Section 810.1(3) of the policy prohibits a covered driver from reporting or remaining on duty while using or possessing alcohol, having an alcohol concentration of 0.02 or greater, or within four hours after using alcohol, and from reporting or remaining on duty while using any drugs or testing positive for drugs. *Id.* Section 810.1(4) mandates that the District require covered drivers to submit to random testing for drugs and alcohol and recognizes the District's authority to impose discipline, including discharge, for a violation of the policy. R.R. at 216a.

On June 12, 2013, Grievant reported to work at 6:45 a.m. and drove the District's school bus on her morning run. After she completed that run, Grievant was notified by her supervisor, Marsha Wagner, that she had been selected for a random drug and alcohol test. Grievant reported to WORKNET Drug and Alcohol Services (WORKNET), in King of Prussia, at 8:24 a.m. and submitted a urine sample. She returned to the District and clocked out around 9:00 a.m. At 10:10 a.m. she returned to work for her second run, which she finished at 12:12 p.m.

On June 14, 2013, a WORKNET physician notified Grievant that she had tested positive for amphetamines, and she immediately reported these results

2

to Wagner. Later that day, WORKNET provided the District with notice of Grievant's positive test results.

On July 22, 2013, Grievant met with Michelle Longo, the District's Director of Human Resources, who advised Grievant that the District was placing her on immediate suspension, without pay, pending termination charges for violating the District's drug policy.[1] On July 30, 2013, Grievant advised the District that she was opting to proceed under the CBA's grievance procedure rather than section 514 of the Public School Code of 1949 (School Code).[2] On August 2, 2013, the Union filed a grievance on Grievant's behalf, requesting that she be reinstated to her position as a bus driver and that she be made whole with respect to any lost wages and benefits. On August 5, 2013, the District's Board of School Directors (Board) approved and executed a statement of charges and a resolution authorizing Grievant's termination.

By letter dated August 16, 2013, the District denied the grievance, and the Union requested that the matter be moved to the next step in the grievance procedure.[3] The Board conducted a "step 2" grievance hearing on October 7,

---

[1] Wagner and Eric Haley, an assistant steward with the Union, were also present at this meeting.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §5-514 (relating to removal of officers/employees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct).

[3] Section 15.2 of the CBA provides for a three-step grievance procedure. Step 1 provides for the filing of a written grievance by the Union and requires the District to issue a written decision within ten days. Step 2 requires the Board to convene a hearing before a committee of Board members chosen by the Board president. The grievance is then presented to the committee by the Union's business agent. Following this hearing, the Board must issue a written decision within ten days. Step 3 permits the Union to submit the grievance to binding arbitration. R.R. at 99a.

3

2013. At this hearing, the parties agreed that the District would have until November 6, 2013, to issue its decision and that "all timelines would be waived until that date." R.R. at 148a. On October 21, 2013, the Board issued a written decision sustaining the District's action and denying the grievance. On November 5, 2013, the Union demanded that the matter proceed to arbitration.

The Arbitrator held a hearing on March 31, 2014. The District presented the testimony of Rita Lebo, a director and custodian of records at WORKNET. Lebo stated that federal Department of Transportation regulations mandate testing for cocaine, marijuana, amphetamines, opiates, and PCP for anyone working in a safety sensitive position, including a bus driver. Lebo stated that if a person working in such a position tests positive for any of these drugs, federal regulations require that the person be immediately removed from that position and be seen by a certified substance abuse professional, who makes determinations concerning the need for counseling and treatment. Lebo explained that the employee will be required to undergo a return-to-duty drug test, as well as a minimum of six follow-up drug tests after returning to work. R.R. at 28a-41a.

Lebo confirmed that Grievant tested positive for amphetamines and that when she was informed of this result, Grievant advised a WORKNET physician that she had taken her son's medication. Lebo acknowledged that federal regulations do not require termination of an employee for a positive drug test and that decisions to hire, retain, and terminate employees are left to the discretion of the employer. R.R. at 41a-42a.

The District next presented the testimony of Longo, its director of human resources. Longo testified regarding the July 22 meeting with Grievant and identified numerous exhibits documenting the procedural steps discussed above.

4

Longo stated that to the best of her knowledge, no District employee had previously tested positive for drugs or alcohol. R.R. at 42a-58a.

Grievant testified that she had worked for the District as a school bus driver for approximately two years and was randomly subjected to drug tests three or four times each year. Regarding the results of the June 12, 2013 test, Grievant said that her son suffers from attention deficit hyperactivity disorder and was initially prescribed a low dosage of Adderall that was gradually increased from five milligrams to thirty milligrams. Grievant stated that when her son began losing his appetite, she became concerned with the effects of this medication, and ultimately decided to try it herself. She noted that she asked her son's psychiatrist if Adderall was a narcotic and was advised it was not, so she thought that it was safe to take. Grievant testified that she took the pill on the evening of June 9, 2013, and she felt no effects from the medication.[4] R.R. at 58a-64a. On cross-

---

[4] Grievant testified as follows:

> Q. I'm sure the arbitrator is wondering, why would you just one day wake up and take your son's medication?
>
> A. No, I didn't just wake up. They prescribed it to him, and I didn't want to give it to him anyway, but school was a problem, so they put him on five milligrams, still having problems, I'm going back and forth to the psychiatrist, and all they kept doing was upping [the dosage], so he went from five milligrams to 30 milligrams within like three months, to the point that it was frustrating to me. So he wasn't eating properly, you know what I mean, he was losing his appetite, stuff like that, so when they went from 15 to 30 milligrams, I did, I took one of his pills, because I'm like, if this makes him feel some type of way, I'm not allowing him to take it, I'm gonna have to go back in front of, you know, the psychiatrist, and we have to figure out another way. I was never thinking it was like a narcotic or nothing, which I did talk to his psychiatrist about it and I just asked a question and all. I didn't

**(Footnote continued on next page…)**

5

examination, Grievant acknowledged that she should have read more about Adderall before trying it herself. R.R. at 68a.

By opinion and award dated June 25, 2014, the Arbitrator granted the grievance in part and denied it in part. Addressing whether the District had just cause to terminate Grievant, the Arbitrator noted that there was no dispute concerning Grievant's violation of the drug and alcohol policy or the District's authority to terminate employees who violate that policy. However, the Arbitrator further noted that, under the policy, the District was not required to terminate an employee for a violation. The Arbitrator observed that the District's reservation of discretion to impose a lesser penalty reflected that the District was sophisticated and insightful enough to anticipate that, on occasion, unique circumstances might call for a lesser penalty. The Arbitrator then concluded that Grievant's situation presented such unique circumstances, reasoning as follows:

> [Grievant] is not a recreational drug user. Nor, is she likely to repeat this misadventure. Her singular foray was to try and understand why the drug, prescribed by a physician, affected her son so dramatically. She found out from her son's psychiatrist that Adderall was not a

**(continued...)**

> know enough about the medicine, because I did ask was it a narcotic, but I didn't ask was it a controlled substance, because he told me no, it's not a narcotic. So I'm never thinking they're giving my nine year old some medicine that would put me in a position like this. And I know I'm not supposed to take nobody's medicine, but I was in -- this was a personal matter between me and my son. So it was never like for social or this is what I do, you know, no.

R.R. at 62a-64a.

6

narcotic. In her mind, if it weren't a narcotic, there was, evidently, no danger. (N.T. 62-63). [Grievant] worked the Monday, Tuesday and Wednesday after she ingested a single dose of her son's Adderall the preceding Sunday. There was no testimony that any District employee who interacted with [Grievant] during those three days noticed anything unusual in her behavior, or suspected that she was impaired in any way. And, the morning of her test, [Grievant's] supervisor, after chatting with her, allowed [Grievant] to drive the school bus to her test site. I point this out, not in defense of [Grievant's] taking the medication, but to highlight that there is no record evidence she was at all impaired when she drove students.

While having amphetamines in her system is clearly in violation of the District's drug and alcohol testing policy, there is simply no evidence that she was at all impaired or that her acuity to drive the school bus was at all diminished.

Moreover, the U.S. Department of Transportation Regulations for safety sensitive positions, such as a bus driver, do not require termination of an employee who tests positive, but merely require their immediate removal from the safety sensitive position. (N.T. 42).

Under these circumstances, on this record, the District's termination was too severe a penalty considering the facts presented.

Arbitrator's opinion at 10-11. Having concluded the District's termination of Grievant's employment was too severe a penalty, the Arbitrator issued an award directing that Grievant be returned to her position as a school bus driver, subject to the conditions that: she first "be evaluated, pursuant to Department of Transportation Regulations, by a federally certified substance abuse professional, who will determine if any counseling and/or treatment is necessary. [She also must] pass a return-to-duty drug test . . . and submit to at least six such tests during

the first year of employment, as required by the Regulations." Arbitrator's opinion at 11. The Arbitrator directed that Grievant receive back pay from the date of her dismissal to the date of the award. The award denied Grievant pay for the time she spends in her evaluation and any recommended counseling or treatment program but allowed her benefit accrual to continue during the evaluation and counseling or treatment period.

The District filed a petition for review with the trial court, asserting that: the Arbitrator's award did not draw its essence from the CBA; the award was contrary to a well-defined, dominant public policy of protecting children from exposure to illegal drug use; the award ignores the District's authority under section 514 of the School Code to terminate an employee for improper conduct; and the Arbitrator exceeded his jurisdiction by reinstating Grievant to her position after finding that she tested positive for drugs while on duty. The trial court rejected each of these arguments.

The trial court first addressed whether the Arbitrator's award drew its essence from the CBA.[5] The trial court specifically found that the issue of whether the District had just cause to discharge Grievant was within the terms of the CBA[6] and concluded that the Arbitrator's interpretation of that term to exclude a one-

_____

[5] A court reviewing an arbitrator's award will apply a two-pronged essence test. "First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement." *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999).

[6] Section 16.1 of the CBA provides that the Board "shall have the right to discipline or discharge any employee for just cause or for violation of this Agreement." R.R. at 100a.

8

time policy violation could be rationally derived from the CBA. Next, relying on our analysis in *Blairsville-Saltsburg School District v. Blairsville-Saltsburg Education Association*, 102 A.3d 1049 (Pa. Cmwlth. 2014), *appeal denied*, 109 A.3d 680 (Pa. 2015), and applying the three-step analysis set forth in *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011), the trial court held that the Arbitrator's award was not contrary to a well-defined public policy to protect children from exposure to illegal drugs. In doing so, the trial court emphasized the Arbitrator's findings that Grievant only experimented one time with Adderall, she was not an illegal drug user, and she was not a danger to students.

The trial court also determined that the award does not ignore the District's statutory authority under the School Code to terminate an employee for improper conduct but, instead, acknowledges that the parties proceeded with this matter under the CBA's grievance provisions. Additionally, the trial court concluded that the award did not exceed the Arbitrator's jurisdiction, observing again that an arbitrator's award will be upheld if it represents a rational interpretation of the parties' collective bargaining agreement. *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999).

The District now appeals to this Court.[7] Preliminarily, we note that our standard of review of an arbitrator's award is the deferential essence test, which requires that the award be confirmed if: (1) the issue as properly defined is within the terms of the agreement; and (2) the award can be rationally derived from

---

[7] By memorandum opinion and order dated July 15, 2015, we denied the District's request for supersedeas.

9

the agreement. *New Kensington-Arnold School District v. New Kensington-Arnold Education Association*, 140 A.3d 726, 731 (Pa. Cmwlth. 2016). Stated otherwise, under the essence test, a court will only vacate an arbitrator's award "where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education v. Association of Pennsylvania State College & University Faculty*, 71 A.3d 353, 358 (Pa. Cmwlth. 2013) (quoting *Cheney University*, 743 A.2d at 413).

Additionally, "[a]n arbitration award will not be upheld if it contravenes public policy." *New Kensington-Arnold School District*, 140 A.3d at 736. In considering whether an arbitrator's award violates public policy, the following three-step analysis is employed:

> First, the nature of the conduct leading to the discipline must be identified. Second we must determine if that conduct implicates a public policy which is well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests. Third, we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.

*Id.* (quoting *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011).

Relying on *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 72 A.3d 755 (Pa. Cmwlth. 2013), the District first argues that the Arbitrator's award violates a well-defined, dominant public policy of

10

protecting children from dangers related to illegal drug use. In *Westmoreland*, the grievant was employed at Westmoreland Intermediate Unit #7 as an elementary school classroom assistant, and she worked closely with emotionally disturbed children. The grievant was found unconscious in the school's restroom as a result of a drug overdose, and the evidence established that she was wearing a 100 mcg Fentanyl patch on her back that she obtained from a friend.[8] The grievant did not have a prescription for this medication, and criminal charges were filed against her for possession of a controlled substance and disorderly conduct. Subsequently, the grievant entered into a plea agreement by which she agreed to probation without verdict. Following an investigation, the employer terminated her employment due to her possession and use of a non-prescribed controlled substance in the workplace during school hours.

The grievant challenged the termination through grievance arbitration. The arbitrator sustained the grievance and found that the employer lacked just cause to terminate her because her conduct did not rise to the level of immorality under Section 1122(a) of the School Code.[9] Citing the grievant's unblemished 23-year tenure with the employer, the arbitrator concluded that her "single error of judgment" did not amount to conduct warranting discharge. *Westmoreland*, 72 A.3d at 757. The arbitrator ordered the grievant's reinstatement, without back pay

---

[8] Fentanyl is a narcotic (opioid) analgesic and is a Schedule II controlled substance under Section 4 of The Controlled Substance, Drug, Device and Cosmetic Act (CSDDCA), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-104. Under Section 113 of the CSDDCA, it is a misdemeanor for a person to possess a Schedule II controlled substance without a valid prescription.

[9] 24 P.S. §11-1122(a) (listing causes for termination of a professional employee's contract).

11

or benefits, and subject to conditions, including participation in a drug and alcohol treatment program. However, following remand from the Supreme Court, this Court vacated the arbitrator's award, concluding that the award demonstrated a tolerance for illicit drug use, in contravention of public policy.[10]

In response, the Union contends that *Westmoreland* is distinguishable because in this case, the Arbitrator expressly found that Grievant was not a recreational drug user and was not likely to repeat her actions. Indeed, the Arbitrator explained that "Grievant's singular foray" was motivated by her desire to "understand why the drug, prescribed by a physician, affected her son so dramatically." Arbitrator's op. at 10. The Union notes that Grievant checked with her son's psychiatrist and was informed that Adderall was not a narcotic; thus, she reasonably believed that there was no danger in ingesting a dosage. Further, the Union emphasizes the Arbitrator's conclusion that "there is simply no evidence she was at all impaired or that her acuity to drive the school bus was at all diminished." Arbitrator's op. at 11.

The Union argues that the Arbitrator's award is in accord with our decision in *Blairsville-Saltsburg School District*. The grievant in *Blairsville-Saltsburg School District* taught social studies to 7th and 8th grade students and had been employed by the school district as a teacher since 1988. He was discharged in 2012, following a third arrest, in 2010, for driving under the influence of

_____

[10] After noting the arbitrator's finding that the grievant's conduct represented *a single error of judgment*, the court characterized the arbitrator's award as "clearly recogniz[ing] that [the grievant] *had an ongoing drug problem*," determined that reinstating the grievant "with the hope she will *overcome her addiction*, defies logic and violates public policy," and concluded that an elementary classroom "is no place for *a recovering addict*." 72 A.3d at 759 (emphasis added).

12

alcohol. In 1987, the grievant was charged in New York with driving while intoxicated, and in 2000, he was charged in Pennsylvania with driving under the influence of alcohol.[11] After learning of the grievant's 2010 arrest and his two prior offenses, the school district suspended him without pay pending dismissal, asserting that his three incidents of driving while impaired constituted immorality and, therefore, was just cause for his termination under Section 1122 of the School Code. The grievant's union filed a grievance on his behalf and the matter proceeded to arbitration.

"The arbitrator made the factual determination that the three incidents, each separated by a 'great expanse of time,' did not constitute a course or pattern of conduct sufficient to support a charge of immorality." *Blairsville-Saltsburg School District,* 102 A.3d at 1051 (citations omitted). The arbitrator also found that the grievant was a recovering alcoholic who was currently living a life of sobriety and who had clearly learned from his mistakes. Based on these findings, the arbitrator directed the school district to reinstate the grievant to his former position. The school district petitioned to vacate the award on the basis of the public policy exception, and the common pleas court granted the petition and reinstated the grievant's discharge.

On further appeal, this Court reversed the common pleas court's decision. We distinguished the arbitrator's award in *Westmoreland,* which "placed the teacher back into the classroom while she was attempting recovery," in

---

[11] The opinion does not indicate any sentence relating to the 1987 offense, a misdemeanor under New York law. With respect to the 2000 charges, the teacher was accepted into the Accelerated Rehabilitative Disposition program and, following completion of this program, his charges were dismissed. However, following his guilty plea to the 2010 charges, the grievant was sentenced to five years' probation and five months of house arrest. 102 A.3d at 1050-51.

13

violation of a well-defined public policy of protecting children from drugs and drug use. *Blairsville-Saltsburg School District*, 102 A.3d at 1052. We noted that in contrast to those circumstances, the arbitrator found that the grievant was a recovered alcoholic, no longer drank and drove, successfully attended a rehabilitation center, and clearly learned from his mistakes. *Id.* We recognized the well-defined public policy against drinking and driving under the influence, and, stressing that a reviewing court is bound by the arbitrator's findings, *id.*, we held that the arbitrator's award that placed the grievant back in the classroom after he was rehabilitated did not violate that policy.

Because the facts and circumstances are similar to the matter before us, we agree that our decision in *Blairsville-Saltsburg School District* is controlling. We also are mindful that in determining whether the public policy exception applies, the "appropriate test is not whether the grievant's actions or conduct violate a public policy, but whether the arbitrator's award violates public policy." *Rose Tree Media Secretaries & Educational Support Personnel Association v. Rose Tree Media School District*, 136 A.3d 1069, 1076 (Pa. Cmwlth. 2016). Given the arbitrator's findings that Grievant's ingestion of her son's medication was a single "misadventure" not likely to be repeated, as well as the conditions imposed upon Grievant's return to her positon, we conclude that the arbitrator's award does not "pose an unacceptable risk" that it will undermine the public policy at issue or cause the District to breach its lawful obligations or public duties. *City of Bradford*, 25 A.3d at 414. Accordingly, we reject the District's argument that the public policy exception to the essence test applies.

The District next contends that the Arbitrator's award does not draw its essence from the CBA. Relying on *Riverview School District v. Riverview*

14

*Education Association, PSEA-NEA*, 639 A.2d 974 (Pa. Cmwlth. 1994), the District first argues that a court may vacate an arbitrator's award under the essence test if the court determines that the award was "manifestly unreasonable." However, our Supreme Court has expressly stated that the essence test does not allow a court to evaluate the reasonableness of an award. *See Cheney University*, 743 A.2d at 413 n.8:

> [I]n the context of review of an Act 195[12] labor arbitration award, determining an award to rationally be derived from a collective bargaining agreement connotes a more deferential view of the award than the inquiry into whether the award is reasonable. An analysis of the "reasonableness" of an award too easily invites a reviewing court to ignore its deferential standard of review and substitute its own interpretation of the contract language for that of the arbitrator. Thus, we find that in this very limited context, a review of the "reasonableness" of an award is not the proper focus.

*See also*, *Pennsylvania Game Commission v. State Civil Service Commission (Toth)*, 747 A.2d 887, 891 n.7 (Pa. 2000) (reiterating that "the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is manifestly unreasonable).

The District further contends that the Arbitrator's award does not draw its essence from the CBA because it ignores the provisions of Article 16.1, under which the District reserves the right to discharge employees for improper conduct. In relevant part, Section 16.1 of the CBA states:

> The Board shall have the right to discipline or discharge any employee for just cause or for violation of this

---

[12] The Public Employe Relations Act, Act of July 23, 1970, P.L. 30, *as amended*, 43 P.S. §§1101.101–1101-2301, is commonly known as Act 195.

15

Agreement.  The Board shall have the right to immediately suspend or discharge any employee for . . . being under the influence of liquor or drugs during work time, including lunch time.

R.R. at 100a.  The District maintains that nothing in the CBA authorized the Arbitrator to disregard this language.

However, we have previously held that in the absence of a clear limitation in the CBA, it is within an arbitrator's authority to modify the discipline imposed by a school district.  *School District of Philadelphia v. Commonwealth Association, Teamsters Local 502*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 151 C.D. 2016, filed April 25, 2017); *Abington School District v. Abington School Service Personnel Association/AFSCME*, 744 A.2d 367, 369 (Pa. Cmwlth. 2000). "[W]here the agreement does not specifically define or designate the discipline to be imposed, and does not specifically state that the employer is the one with sole discretion to determine discipline, the arbitrator is within his or her authority to modify the discipline imposed . . . ." *Id.* "For the discipline imposed not to be subject to arbitration, the language must be similar to that in *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers, AFL-CIO*, 610 A.2d 506 [Pa. Cmwlth. 1992], which specifically reserved to the district disciplinary matters provided for under the Pennsylvania School Code." *Abington School District*, 744 A.2d at 370 (footnote omitted).  In this case, the District points to no language in the CBA that limits the Arbitrator's power to modify discipline.  Accordingly, the District's contentions that the Arbitrator's award does not draw its essence from the CBA are without merit.

The District further argues that the Arbitrator's award improperly infringes on the District's express authority under the School Code to terminate an employee for improper conduct.  The District complains that the trial court erred

16

by construing the parties' stipulation that Grievant would be proceeding through the grievance procedure rather than the provisions of Section 5-514 of the School Code as a waiver of the District's statutory right to discharge an employee for certain conduct. Section 514 of the School Code states:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 P.S. §514. Citing *Board of Education of the School District of Philadelphia,* the District contends that Grievant "was under the influence of a Schedule II narcotic while driving a school bus filled with students" and, therefore, her conduct clearly constitutes "improper conduct" under Section 514.

However, in making this argument the District ignores the Arbitrator's findings. Contrary to the District's characterization of the facts, the Arbitrator expressly found that "there is simply no evidence that she was at all impaired or that her acuity to drive the school bus was at all diminished." Arbitrator's opinion at 10-11. Based on the *Arbitrator's* findings, the record does not support the District's contentions, nor does it indicate that Grievant's conduct was in any manner similar to the egregious sexual misconduct alleged in *Board of Education of the School District of Philadelphia.*[13]

The District's final argument is that the Arbitrator exceeded his authority in reinstating Grievant with full back pay after finding that she tested

---

[13] The grievant in that case was charged with verbal and physical sexual harassment. 610 A.2d at 507.

17

positive for drugs while on duty. Although presented as a separate argument, the District cites no additional authority and essentially repeats the arguments addressed above. To the extent that the matter of back pay is a distinct, additional issue, we note that the Arbitrator's decision framed the issue in this case as "Whether the District had just cause to terminate [Grievant], and if not, what shall the remedy be?" Thus, the issue of the appropriate remedy was expressly before the Arbitrator. Beyond conflating this issue with its previous arguments, the District offers no support for its contention that the Arbitrator exceeded his authority in fashioning the award.

Accordingly, we affirm the trial court's denial of the District's petition to vacate the arbitration award.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Merion Area School District,   :
                                 :
              Appellant    :
                                 :
            v.            : No. 887 C.D. 2015
                                 :
Teamsters Local #384         :

O R D E R

AND NOW, this 23<u>rd</u> day of <u>June</u>, 2017, the order of the Court of Common Pleas of Montgomery County, dated April 28, 2015, is affirmed.


_____
MICHAEL H. WOJCIK, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Merion Area School District,  :
     Appellant    :
             :   No. 887 C.D. 2015
    v.       :
             :   Argued: February 8, 2017
Teamsters Local #384    :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE ROBERT SIMPSON, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE JULIA K. HEARTHWAY, Judge
      HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH      FILED: June 23, 2017


    I respectfully dissent because I believe that the Arbitrator's award in this case, insofar as it reinstated Sheena Boone-East (Grievant), a school bus driver who knowingly and intentionally ingested an unprescribed Schedule II narcotic containing amphetamines the day before she was scheduled to drive a school bus and tested positive three days later, violates a well-defined, dominant public policy of protecting school children from illegal drugs/drug use and ensuring their safety.

    While the Arbitrator described Grievant's actions as a mere "misadventure" that was not likely to be repeated, Arbitrator's op. at 10, the fact that Grievant's actions in this case posed a threat to the students that she was entrusted to transport to and from school cannot be overlooked. Grievant made a considered decision to ingest the Schedule II narcotic on a Sunday evening and work the next

three days as a school bus driver while the narcotic remained in her system, which is expressly prohibited by section 16.1(3) of the collective bargaining agreement (CBA) between Upper Merion Area School District (the District) and Teamsters Local #384, the union that represented Grievant, as well the drug and alcohol policy enacted by the District.  Section 16.1(3) of the CBA states that the District has the right to immediately suspend or discharge any employee who is "under the influence of liquor or drugs during work time, including lunch time."  (Reproduced Record (R.R.) at 100a.)  Section 810.1(4) of the District's drug and alcohol policy mandates random drug and alcohol testing and authorizes the District to impose discipline, up to and including discharge, for a violation of the policy.  (R.R. at 216a.)

Although Grievant did not ingest her son's Adderall on school property or during school hours, she did so on a Sunday evening, June 9, 2013, less than 24 hours before she knew she would be required to report to work as a school bus driver. Grievant transported students for the next three days, June 10, 11, and 12, 2013.  The fact that she may not have appeared impaired to her supervisor or co-workers is simply not relevant.  The amphetamines she ingested remained in her system the entire time, as evidenced by her positive test on June 12, 2013, three days after taking her son's medication.

The District has an absolute obligation to ensure the safety and welfare of all students as it stands *in loco parentis* to pupils "during the time they are in attendance, **including the time required in going to and from their homes**." Section 1317 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1317 (emphasis added).  In order to ensure that obligation, the District enacted School Board Policy 810.1, entitled "Drug/Alcohol Testing – Covered Drivers."  As noted above, section 810.1(4) of this policy mandates that the

District require covered drivers, such as Grievant, to submit to random testing for drugs and alcohol, and authorizes the District to discharge an employee for a violation of the policy. (R.R. at 216a.) Moreover, as the Majority recognizes, Rita Lebo, a director and custodian of records at WORKNET, the facility that administered Grievant's drug test, testified before the Arbitrator that United States Department of Transportation regulations recognize a bus driver as a safety sensitive position and mandate drug testing for five classes of drugs, one of which is amphetamines. (R.R. at 33a.)

Further, I believe that the reliance of the Majority on *Blairsville-Saltsburg School District v. Blairsville-Saltsburg Education Association*, 102 A.3d 1049 (Pa. Cmwlth. 2014), *appeal denied*, 109 A.3d 680 (Pa. 2015), and *New Kensington-Arnold School District v. New Kensington-Arnold Education Association*, 140 A.3d 726 (Pa. Cmwlth. 2016), is misplaced, as those matters are distinguishable from the present case.

In *Blairsville-Saltsburg School District*, the grievant's conduct, drunk driving, occurred during non-school hours and did not place any students in harm's way. The same is true of *New Kensington-Arnold School District*. The grievant in that case was charged with possession of marijuana and drug paraphernalia following discovery of the same at his home in the course of an investigation involving his brother. The grievant's actions did not occur on school property or endanger any students. To the contrary, Grievant herein ingested an unprescribed Schedule II narcotic, albeit at home, and drove a school bus the following three consecutive days. By operating the school bus with amphetamines in her system, Grievant endangered the lives of every student she transported during those days.

The Majority aptly recognizes that a reviewing court is generally bound by an arbitrator's findings. *Blairsville-Saltsburg School District*, 102 A.3d at 1052. However, even accepting the facts as found by the Arbitrator, Grievant's actions here placed the school children under her care, and whom the District has an absolute duty to protect, at risk both to their general safety and their exposure to illegal drugs and drug use. Fortunately, in this case, Grievant was able to perform her duties without incident, even though the amphetamines remained in her system as of the date of her drug test three days later. Nonetheless, we cannot allow the lack of any incident to undermine the implicated public policy described above. Indeed, a school district should not have to wait until a school bus driver ingests other illicit drugs, whether or not in the form of a prescribed or unprescribed narcotic substance, to the point where he/she becomes so impaired that the safety of school children is jeopardized and/or an accident occurs before invoking this public policy exception.

For these reasons, I believe that application of the public policy exception is warranted in this case and I would reverse the order of the Court of Common Pleas of Montgomery County denying the District's petition for review seeking to vacate and set aside the Arbitrator's award.

_____
PATRICIA A. McCULLOUGH, Judge

PAM - 4