IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Turnpike Commission,   :
                          Petitioner   :
                                        :
              v.                    :
                                        :
Teamsters Local Union No. 77,   :   No. 1347 C.D. 2019
                    Respondent   :   Submitted: March 24, 2020

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED: May 1, 2020

       The Pennsylvania Turnpike Commission (Commission) petitions this Court for review of the September 5, 2019 Arbitration Award (Award) sustaining Teamsters Local Union No. 77's (Union) grievance and reinstating Greg Cholish (Grievant) to full duty with back pay. The Commission presents two issues for this Court's review: (1) whether the Award is rationally derived from the parties' collective bargaining agreement (CBA); and (2) whether the Award contravenes well-settled public policy. After review, we affirm.

       The Commission employed Grievant as a foreman/equipment operator at its Wyoming Valley maintenance facility. On November 23, 2018, Grievant had an accident with his personal four-wheel drive truck on his way to work. As a result of this accident, he could not drive the truck home without new tires. As part of its maintenance program, the Commission routinely changes tires on its trucks after 40,000 to 50,000 miles of use, and it pays a company (Company) to take away the old tires. After a Commission first responder vehicle had its tires changed on or about

November 1, 2018, the tires were taken to the scrap trailer for the Company to pick up. Grievant placed four of the tires from the scrap trailer on his vehicle.

On November 28, 2018, Commission employee Tom Koslit (Koslit) advised Grievant's immediate supervisor Jai Mertz (Mertz) that Grievant had taken the tires and Mertz needed to talk with Grievant about it. Mertz spoke with Grievant that afternoon, and repeated what Koslit had said. Mertz advised Grievant that they would have to speak further the following evening, when Grievant was scheduled to work. The following evening, Mertz met with Grievant and his shop steward. Grievant initially admitted to taking one tire, and then later admitted to taking four tires. Grievant was subsequently requested to, and did, submit a written statement, in which he declared: "I [Grievant] am responding to accusations that I put some tires on my personal vehicle, because I had damage to my sidewall and would have been stuck at work without a way home. Planned on returning them once I got them replaced." Reproduced Record (R.R.) at 72a.

Grievant also told the Commission's then-District 5 Superintendent Brian Toseki (Toseki) that he had damaged one truck tire on his way to work around November 23rd, but he replaced all four tires because a four-wheel drive vehicle cannot have a mismatched tire. Grievant stated that he did not think to ask a supervisor for permission to take the tires, and admitted that he made a mistake. Toseki recommended Grievant's employment termination because he committed theft, a dischargeable offense under Article 25, Section 2C of the CBA. The Commission's Chief Operating Officer Craig Shuey followed the recommendation, and Grievant was removed effective November 28, 2018.

On December 14, 2018, the Union filed a grievance on Grievant's behalf. On January 3, 2019, the Commission denied the grievance. The Union appealed to arbitration and, on May 23, 2019, the Arbitrator held a hearing. On September 5, 2019, the Arbitrator issued the Award, therein sustaining the grievance

2

and reinstating Grievant to full duty with back pay. The Commission appealed to this Court.

Initially, "[this Court's] standard of review of an arbitrator's award is the deferential essence test[.]" *Upper Merion Area Sch. Dist. v. Teamsters Local #384*, 165 A.3d 56, 62 (Pa. Cmwlth. 2017).

> In an effort to provide clarity, [the Pennsylvania Supreme Court] announced in [*State System of Higher Education (Cheyney University) v. State College University Professional Ass'n*, 743 A.2d 405, 412 (Pa. 1999),] that the essence test entails two prongs: 'First, the court shall determine if the issue as properly defined is within the terms of the [collective bargaining agreement]. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, **the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the** [**collective bargaining agreement**].' *Id.* at 413.

*Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1002 (Pa. 2019) (emphasis added).

> The *Millcreek* Court expounded:
>
> Emphasizing the import and impact of the essence test, [our Supreme Court] observed that a reviewing court 'must accord great deference' to an arbitration award. *Cheyney*, 743 A.2d at 413. [The Pennsylvania Supreme Court] concluded in *Cheyney* that 'in the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties.' *Id.* [The *Cheyney* Court] framed the essence test as a narrow exception to this finality doctrine - the arbitration award must be affirmed unless it 'indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.' *Id*.

*Millcreek Twp. Sch. Dist.*, 210 A.3d at 1002.

> Additionally, '[a]n arbitration award will not be upheld if it contravenes public policy.' *New Kensington-Arnold Sch*[.] *Dist*[.] [*v. New Kensington-Arnold Educ. Ass'n*], 140 A.3d [726,] 736 [(Pa. Cmwlth. 2016)]. In considering whether an

3

arbitrator's award violates public policy, the following three-step analysis is employed:

> First, the nature of the conduct leading to the discipline must be identified. Second[,] we must determine if that conduct implicates a public policy which is well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests. Third, **we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator**.

*Id.* (quoting *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011)[)].

*Upper Merion Area Sch. Dist.*, 165 A.3d at 63 (emphasis added).

The parties do not dispute that the first prong of the essence test is met in this case. However, they disagree as to whether the Award satisfies the second prong of the essence test. The Commission argues that the Award is not rationally derived from the CBA. Specifically, the Commission contends that the Award disregarded and vitiated Article 25, Section 2 of the CBA in its entirety. The Union rejoins that, although the CBA specifies that theft is a dischargeable offense, the CBA does not define theft. Because the Arbitrator concluded that Grievant did not engage in theft, the Union asserts the Award did satisfy the essence test.

At the outset, Article 25 of the CBA provides:

**DISCHARGE OR DISCIPLINARY ACTION**

**Section 1**. <u>No employee shall be suspended or discharged except for just cause</u>. It is understood and agreed that any employee who violates a Commission policy, rule or regulation or provision of this agreement shall receive a written warning for a first offense, a two (2)[-]day suspension without pay for a second offense and shall be subject to discharge for a third offense. A warning letter

4

shall remain effective for a period not exceeding six (6) months. A suspension shall remain effective for a period not exceeding twelve (12) months. The Union may appeal a discharge directly to the second step of the grievance procedure.

**Section 2**. <u>The following offenses shall constitute just cause for immediate discharge</u> without adhering to the progressive disciplinary procedure described in Section 1 of this article.

. . . .

C. <u>Theft</u>, embezzlement or conviction of a felony.

. . . .

Section 4. No employee shall be disciplined unless he has been presented with the offense he has been charged with, in writing, and a copy sent to the Union and the Shop Steward. . . .

R.R. at 43a-44a (underline emphasis added).

Further, Article 26 of the CBA states, in relevant part:

**The Arbitrator** shall have no power or authority to add to, subtract from or modify the provisions of this [CBA] in arriving at a decision of the issue(s) presented and **shall confine his decision solely to the application and interpretation of this** [**CBA**]. The decision or award of the arbitrator shall be final and binding with the proviso that any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted.

R.R. at 46a (emphasis added). The Commission asserts that the Arbitrator disregarded the CBA's plain language.

[E]ven though an arbitrator is not permitted to ignore the [collective bargaining agreement's] plain language in fashioning an award, **the arbitrator's understanding of the plain language must prevail**. A reviewing court 'should not reject an award on the ground that the arbitrator misread the contract.' [*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc*.], 484 U.S. [29,] 38 . . . [(1987).] **The law is clear that an arbitrator's award must draw**

5

**its essence from the [collective bargaining agreement].
It need not** . . . **reflect the narrowest possible reading of
the [collective bargaining agreement's] plain language**.
*Cheyney*, 743 A.2d at 411 (citing [*United Steelworkers v.
Enter. Wheel & Car Corp.*], 363 U.S. [593] . . . [(1960)];
*see also Danville* [*Area Sch. Dist. v. Danville Area Educ.
Ass'n, PSEA/NEA*,] 754 A.2d 1255[, 1260] [(Pa. 2000)]
(observing that **an arbitrator 'is not confined to the
express terms' of the** [**collective bargaining agreement**]
**in discerning the parties' intent**). Even if a court's
interpretation of the [collective bargaining agreement] is
entirely different than the arbitrator's, the award must be
upheld so long as it rationally derives from the [collective
bargaining agreement]. *Westmoreland* [*Intermediate Unit #
7 v. Westmoreland Intermediate Unit # 7 Classroom
Assistants Educ. Support Pers. Ass'n, PSEA/NEA*], . . . 939
A.2d [855,] 863 [(Pa. 2007)] (holding that **the essence test
clearly does not permit the reviewing court 'to intrude
into the domain of the arbitrator and determine whether
an award is 'manifestly unreasonable''**).

*Millcreek Twp. Sch. Dist.*, 210 A.3d at 1006 (emphasis added).

Here, the Arbitrator opined:

[T]heft, in the context of its general meaning in society, is
the taking of something of value. Indeed, in labor relations,
we routinely permit the immediate discharge of someone
guilty of theft, for no employee has the right to rob its
employer of any item of value belonging to the employer.
Such an action manifests an irreparable breach of trust
between employee and employer, and it is generally
understood between parties and the neutrals interpreting
their contracts, that employers need not maintain such
employees on the payroll. **However, the provision of
agreement here certainly could not have meant that the
parties were in agreement that such trust would be
irreparably broken where an employee would take an
item thrown on a scrap heap to be carted away**. The
mere fact that the item was thrown on the scrap heap . . .
shows that the item is no longer desired by the
[Commission], and is no longer of value to [it]. In sum, it is

6

trash. While the clear language of PTC-3[1] says that such property is not to be taken, **the fact that such tires are placed in what is referred to as a 'scrap trailer' in the record, communicates a message to one and all that the items are worthless**. At best, even if operators, as the [G]rievant, are made aware of the provisions of PTC-3,[2] **the message given them by management is a mixed one as to whether or not such property is up for grabs**.

Award at 5 (emphasis added). The Arbitrator, thus, concluded:

> While theft is clearly a dischargeable offense, there is a question as to whether such a phrase in the [CBA] even covers worthless items, such as those purportedly purloined here. Further, there is simply no persuasive evidence showing that [Grievant] was made aware of [the Commission's] prohibition against taking these tires[.] Accordingly, the [Commission] did not meet its burden in establishing that [Grievant] had advance knowledge that the taking of such tires is viewed as theft. For these two reasons, I cannot find on the [Commission's] behalf here.

Award at 6.

This Court likewise cannot conclude that the Award "indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]." *Millcreek Twp. Sch. Dist.*, 210 A.3d at 1002 (quoting *Cheyney*, 743 A.2d at 413). Although the CBA specifies that theft is a dischargeable offense, the Arbitrator clearly did not interpret the taking of tires discarded in a scrap trailer as theft.

---

[1] PTC-3 refers to the Commission's arbitration hearing exhibit 3, a Commission manual rule which states, in relevant part:

> Items determined to be of no value may not be acquired by [Commission] employees except for previously used shipping and packaging material (e.g.[,] skids, paperboard, cardboard boxes, binders). Packaging material that has further use to the [Commission] may not be taken. Supervisor approval is required prior to obtaining and/or removing previously used shipping and packaging material from Commission property.

R.R. at 76a.

[2] The Arbitrator specifically found that "the record was devoid of evidence that maintenance operators were even made aware of the rule in the manual." Award at 5 n.6.

Consequently, the Union satisfied the second prong of the essence test. Accordingly, "the [Award] must be affirmed." *Id.*

The Commission next argues that the Award directly contravenes well-settled and long-recognized public policy that public employers have the right to discharge employees who commit theft. The Union rejoins that the Award does not pose an unacceptable risk of undermining the public policy against public employee theft, and cites *City of Bradford* to support its position.

The *City of Bradford* Court explained:

> The public policy exception . . . makes the third prong of the analysis ultimately determinative: Does the arbitrator's award pose an unacceptable risk that a clear public policy will be undermined if the award is implemented? This question allows for consideration of the particular circumstances of the case and any attendant aggravating or mitigating factors. In short, the three[-]prong test to determine the public policy exception draws the necessary balance between the public employer's duty to protect the health, safety and welfare of the citizens it serves, the fair treatment of public employees and the salutary goal of [the Public Employe Relations Act[3] (]PERA[)] to insure the prompt resolution of labor disputes in binding arbitration.

*City of Bradford*, 25 A.3d at 415. The *City of Bradford* Court concluded that reducing the discipline from employment termination to a lengthy suspension without pay, for a refuse collector who took money that spilled from an open purse in the trash he was collecting "does not pose a significant risk of undermining the public policy against theft or the City [of Bradford's (City)] ability to faithfully serve its citizens[,]" reasoning:

> The arbitrator . . . found several mitigating factors, including [the employee's] prior good work history, the fact that the incident was isolated and not likely to be repeated

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

8

and that [the employee] made full, if belated, restitution of the money taken. Additionally, as [the trial court] noted, [the employee's] job as a garbage collector did not put him in a position of trust with respect to the City's or residents' property. Finally, [the employee's] crime[4] was not planned, but rather opportunistic and he stole from a bag found in the trash, not in someone's possession or on someone's property.

*Id.* at 415-16.

In the instant case, the Arbitrator expressly ruled that "the provision of agreement here certainly could not have meant that the parties were in agreement that such trust would be irreparably broken where an employee would take an item thrown on a scrap heap to be carted away." Award at 5. Further, the Arbitrator concluded that Grievant could not have known that the Commission would "view[]" the taking of the tires "as theft" under the CBA. Award at 6. Based upon the Arbitrator's findings, this Court holds that the Award does not pose an unacceptable risk that a clear public policy will be undermined if the Award is implemented. Accordingly, the Award does not directly contravene well-settled and long-recognized public policy that public employers have the right to discharge employees who commit theft.

For all of the above reasons, the Arbitration Award is affirmed.

_____
ANNE E. COVEY, Judge

---

[4] The employee in *Bradford* pled guilty to the crime of theft.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Turnpike Commission,    :
                      Petitioner    :
                                   :
               v.              :
                                   :
Teamsters Local Union No. 77,    :    No. 1347 C.D. 2019
                    Respondent    :

## O R D E R

AND NOW, this 1st day of May, 2020, the September 5, 2019 Arbitration Award is affirmed.

_____
ANNE E. COVEY, Judge